FEDERAL SURETY COMPANY v. ALICE PITTS ET AL.

No. 5371. Decided June 25, 1930.
(29 S. W., 2d Series, 1046.)

*Burgess, Burgess, Chrestman & Brundidge* and *L. E. Elliott,* for appellant.

The trial court erred in holding that the heirs of the deceased employee, who would have been entitled to compensation for one hundred weeks for the total and permanent loss of an eye, had he lived, are entitled to recover the compensation to which the employee would have been entitled had he lived, where the employee died from a cause other than the injury for which compensation was payable, and before the term of compensation had expired, and in rendering a judgment in favor of the appellees and against the appellant for such compensation. U. S. F. & G. v. Salser, 224 S. W., 557; Smith v. Southern Surety Co., 193 S. W., 204; Art. 8306, R. S., 1925, Sections 8, 8-a, 8-b, 9, 10, 11, 11-a and 12; Bry-Block Mercantile Co. v. Carson (Tenn.), 288 S. W., 726; Proops v. Twohey Bros. (Ariz.), 240 Pac., 277; Lahoma Oil Co. v. Industrial Comm. (Okla.), 175 Pac., 836; Western Indemnity Co. v. Industrial Comm. (Okla.), 219 Pac., 417; Heiselt Const. Co. v. Industrial Comm. (Utah), 197 Pac., 589; Burns Case (Mass.), 105 N. E., 601; Wozneak v. Buffalo Gas Co., 161 N. Y. S., 675; La Chapelle v. Union Pacific Coal Co. (Wyo.), 214 Pac., 587; 15 A. L. R., 822; 24 A. L. R., 441; 29 A. L. R., 1426; 51 A. L. R., 1446.

*Cole, Cole, Patterson & Kemper* (*W. L. Kemper,* of counsel) for appellees.

A claim for compensation for specific indemnity under the specific injuries section of the Workmen's Compensation Law of this State survives the death from other causes of the person injured, he having given due notice of his injury and duly filed his claim in respect thereto in the manner and within the time required by such Law. American Indemnity Co. v. Green, 281 S. W., 895; Article 8306, Rev. Civ. Stat. 1925, Sections 3b, 12, 15a; Cassell v. U. S. F. & G. Co., 283 S. W., 127; Consolidated Underwriters v. Breedlove, 273 S. W., 325; Consolidated Underwriters v. Saxon, 265 S. W., 147; Dohman v. Texas Emp. Ins. Ass'n, 285 S. W., 848; Employers Liability Assurance Corp. v. Light, 275 S. W., 685; Fielder v. Houston Oil Co. of Texas, 165 S. W., 48; Fielder v. Houston Oil Co. of Texas, 208 S. W., 158; Fox v. Dallas Hotel Co., 240 S. W., 517; Georgia Casualty Co. v. Ginn, 272 S. W., 601; Harris County v. Hammond, 203 S. W., 445; In re Bartoni, 225 Mass., 349, 114 N. E., 663; In re Murphy, 224 Mass., 592, 113 N. E., 283; Laughter v. Seela, 59 Texas, 186; Lumberman's Reciprocal Ass'n v. Pollard, 295 S. W., 279; Maryland Casualty Co. v. Ferguson, 252 S. W., 854; Middeton v. Texas Power & Light Co., 108 Texas, 96, 185 S. W., 556; Moore v. Lumberman's Reciprocal Ass'n, 258 S. W., 1051; Moore v. Lumberman's Reciprocal Ass'n, 241 S. W., 1108; Moorman v. Terrell, Comptroller, 109 Texas, 133, 202 S. W., 727; Roland et al. v. Employers' Casualty Co., 290 S. W., 895, 1 S. W., (2d) 568; Silurian Oil Co. v. White, 252 S. W., 569; Southern Surety Co. v. Inabnit, 1 S. W., (2d) 412; Spears v. City of San Antonio, 110 Texas, 618, 223 S. W., 166; Standard Acc. Ins. Co. v. Stanaland, 285 S. W., 878; Texas Employers' Ins. Ass'n v. McDonnell, 278 S. W., 294; Texas Employers' Ins. Ass'n v. Moreno, 277 S. W., 84; Texas Employers' Ins. Ass'n v. Morgan, 295 S. W., 588; Texas Employers' Ins. Ass'n v. Price, 300 S. W., 667; Texas Indemnity Ins. Co. v. Wilson, 261 S. W., 289; Travelers Ins. Co. v. Richmond, 291 S. W., 1085; Trimmier v. Carlton, 116 Texas, 572, 296 S. W., 1070; U. S. Casualty Co. v. Hardie, 288 S. W., 871; United States Fidelity & Guaranty Co. v. Salser, 224 S. W., 557; United States Fidelity & Guaranty Co. v. Summers, 262 S. W., 247; Western Indemnity Co. v. Corder, 249 S. W., 316.

Mr. Presiding Judge SHORT delivered the opinion of the Commission of Appeals, Section A.

The following statement and certified question to the Supreme Court is before us for disposition from the First Supreme Judicial District Court.

"This cause is pending here upon the following agreed statement of the facts and of the only question raised thereby for decision:

"1.  That on the 2nd day of March, 1927, J. A. Barnes, doing business as Barnes Machine Shop, was a subscriber to the Workmen's Compensation Law of the State of Texas, through and by virtue of a policy of compensation insurance carried with the Federal Surety Company, which was at all times on said date and prior thereto in full force and effect, and covered all the employees of said Barnes Machine Shop, including John Glover, deceased.

"2.  That John Glover, deceased, on March 2, 1927, sustained an injury while engaged in the furtherance of his duties as an employee and in the course of his employment with the said J. A. Barnes, trading as Barnes Machine Shop, said injury consisting of the total and permanent loss of the right eye, the ball of said eye being immediately and completely dissipated by said injury.

"3.  That the said employer, and Federal Surety Company, had actual notice of the injury, within thirty days from the date thereof; and that the Federal Surety Company, on account of said injury, paid to said John Glover, deceased, during his life time, the sum of $88.64 (being $11.08 per week), as compensation; that the average weekly wage of said John Glover, deceased, was the sum of $22.66 per week, and the consequent rate of compensation to which he was entitled was $13.56 per week; that on or about the 28th day of March, 1927, John Glover filed his claim for compensation, at the rate of $13.56 per week, for the full period of one hundred weeks, in which said claim he sought not only compensation, as aforesaid, but a lump sum settlement for and on account of the total and permanent loss of the sight of his right eye.

"4.  That his claim, as presented, was set for hearing before the Honorable Industrial Accident Board of the State of Texas, but that prior to the time of said hearing, the said John Glover, deceased, was killed, on or about the 14th day of May, 1927, in a personal altercation with a third party, so that his death was not caused by the aforementioned injury, for which his claim for compensation was made.

"5.  That on or about the 4th day of June, 1927, attorneys for the appellees herein, who also filed the aforementioned claim of John Glover, deceased, before the Industrial Accident Board, filed claim before said Board on behalf of Alice Pitts, the widowed mother of John Glover, deceased, and Annette Glover, a sister of the deceased, for compensation to which they claimed to be entitled,

as heirs and beneficiaries of John Glover, deceased, and because of the total and permanent loss of his said eye, as aforesaid, setting forth their dependency on John Glover, deceased, and praying that an award be made to them for the amount that the said John Glover, deceased, might have received for the loss of said eye, had he lived; and thereafter, on the 14th of July, 1927, the said attorneys for appellees advised the Industrial Accident Board that all of the appellees were the surviving relatives of John Glover, deceased, and set up their claim for compensation, as his heirs at law; that the Federal Surety Company had due notice of the death of the said John Glover, and the aforementioned claims filed on behalf of all of the appellees with the Industrial Accident Board.

"6. That on the 16th of July, 1927, after due notice to all parties, the Industrial Accident Board of the State of Texas made and entered a final ruling and decision and award on said claim then pending before said Board, in which decision and award the Board, among other things, found, ordered and decreed that the said John Glover, in consequence of his said injury in the course of his employment, suffered the loss of an eye, for which he was entitled to recover and have paid to him compensation at the fixed rate of $13.34 for the definite period of 100 weeks, that such right to compensation vested in the said John Glover the moment he suffered the permanent and total loss of the eye, that the Federal Surety Company admitted liability and assumed the obligation of paying and paid compensation to John Glover until May 5, 1927, that on May 15, 1927, the said John Glover was killed, and the said estate of John Glover immediately became entitled to recover from and have paid to it by the Federal Surety Company compensation at the rate of $13.34 per week for the definite and fixed period of 100 weeks, same beginning to accrue on March 10, 1927, the 8th day following infliction of the injury, and being payable weekly thereafter as each of said installment payments accrued and matured until the full period of 100 weeks expired, less credit of sum total of all amounts paid to John Glover, deceased, during his lifetime; and said Board further found, ordered and decreed that said John Glover, deceased, left surviving him Alice Pitts, mother, Annette Glover, sister, Elliott Glover, Lee Glover, brothers, and Harry Pitts, half-brother; and that the compensation awarded to the estate of John Glover, deceased, will pass according to the laws of descent and distribution to said legal heirs; so that the appellees, as the heirs at law of the Estate of John Glover, deceased, were awarded com-

pensation for the definite and fixed period of 100 weeks, at the rate of $13.34 per week, same beginning to accrue on March 10, 1927, and being payable weekly thereafter, until each of the installment payments accrue and mature, and until the full period of 100 weeks had expired, less credit of the sum total ·of all amounts paid to John Glover, deceased, during his lifetime, and also attorneys' fees, and 15% on the first $1000.00 and 10% on the excess thereof, which was ordered and directed by said Board to be paid direct to the attorneys for the appellees herein.

"7. That thereafter, on the 30th of July, 1927, the Federal Surety Company gave notice of its unwillingness to abide by the final ruling and decision of the Board and its intention to appeal therefrom, and on the 2nd day of August, 1927, filed this suit in the district court of Harris County, to set aside said final ruling and decision; that the amount involved is within the jurisdiction of the district court.

"8. That the attorneys for the appellees hold powers of attorney, executed by John Glover, deceased, and by the appellees respectively, under which, in remuneration for their services before the Industrial Accident Board and before the District Court, they are entitled by virtue of an assignment in each of such powers of attorney to one-third of whatever recovery of compensation, if any, may be awarded to the appellees.

"9. That the father of John Glover, deceased, died previous to the injury sustained by John Glover, deceased, and that upon the death of John Glover, deceased, he left surviving him his mother, Alice Pitts, a widow, and one sister, Annette Glover, two brothers, Elliott and Lee Glover, and one half-brother, Harry Pitts, who constituted and composed the heirs and sole and only heirs to the Estate of John Glover, deceased; that there are no debts of the said John Glover, deceased, which have not been paid, and no administration has been taken on his Estate and no necessity for administration exists; that during his lifetime John Glover, deceased, made contributions to the support of his mother, Alice Pitts, and his sister, Annette Glover, which in a substantial way aided them to live; that he made no contributions whatsoever to the support of any other of the appellees, or any other parties, being at the time of his death a baron sole, he having never been married.

If entitled to recover on their cause of action, appellees are entitled to recover interest at the rate of six per cent per annum on all past due weekly installments of compensation from the date upon which each respective installment has accrued.

The Court rendered a judgment in favor of the appellees for the amount of compensation to which the deceased John Glover would have been entitled, for the total and permanent loss of his eye, had he lived.

Appellant admits its liability for a balance of $37.28 due John Glover, deceased, at the time of his death.

The only question for determination by this Honorable Court is whether or not the heirs of the deceased employee, who would have been entitled to compensation for 100 weeks for the immediate total and permanent loss of an eye from an injury sustained in the course of his employment, had he lived, are entitled to recover the compensation to which the employee would have been entitled had he lived, where the employee died from a cause other than the injury for which compensation is payable and before the term of compensation has expired.

"Having ourselves first determined it in the negative, upon rehearing we deem it advisable to certify to you this question:

"Were the heirs of John Glover entitled to the compensation that would have thus enured to him, had he lived?

"In connection with the certification we call attention to U. S. F. & G. Company v. Salser, 224 S. W., 557, and Moore v. L. R. Association, 258 S. W., 1051."

The parent of our Workmen's Compensation Law is the British Act of Compensation, the original of which was passed by the British Parliament in 1897, though there were sporadic efforts made in that direction as far back as 1880 in England, and in 1884 in Germany. The idea was first transplanted into the United States by the Federal Government, and most of the States, beginning with Massachusetts and New York have gradually enacted compensation laws. The original act in Texas was passed in 1913, was amended in 1917, and again in 1923. Naturally, since the principle enunciated in these laws is a new one, and is a radical departure from the old idea, that each individual employer was only responsible for injuries inflicted upon his employees, as the result of his negligence, new questions are arising for solution by the courts frequently. The question propounded in this case is a new one in Texas, except for the decision in the case of United States F. & G. Co. v. Salser, 224 S. W., 557, wherein it was held that upon the death of the employee, his right to unaccrued compensation lapsed by reason of his death. According to the British Statutes the workman's family was provided for, in *any* event, though the workman

himself was denied compensation where the injury was caused by his wilful misconduct. The Texas law makes four exceptions to the rule that compensation shall be allowed for injuries sustained in the course of employment, and in this respect is much more restrictive of the rights of employees and their dependents than is the British law. However, it is the uniform policy of the courts of this State to construe the Workmen's Compensation Law liberally to the end that its evident purposes may be accomplished. The Supreme Court of Texas in Middleton v. Texas Power and Light Company, 108 Texas, 96, 185 S. W., 556, announced the principle that the constitutional basis for the scheme of transferred liability provided in the Workmen's Compensation Law consists in a tripartite contract between the employer, the employee and the insurer. This principle first enunciated in Texas in the case above mentioned, was afterwards re-affirmed by the Supreme Court in Oilmen's Reciprocal Association v. Franklin, 116 Texas, 59, 286 S. W., 195, and Southern Casualty Company v. Morgan, (Com. App.) 12 S. W., (2d) 200. In the last case cited it is said: "A proceeding for compensation brought against an insurer in respect to a policy issued to a subscriber duly authorized by the statute, is at bottom and in essence, a suit upon a contract; the right vindicated and the obligation enforced are consensual. In such a case, procedure is named in the statute and by adoption in the contract."

At common law an action for damages based on a tort, lapsed with the death of the plaintiff. The right to recover damages in Texas, for the commission of a tort is now regulated by statute. Upon the contrary, rights based upon a contract, except where the procedure is controlled by statute, are established at the present time, by the intentions of the parties thereto and the usages and customs in force immemorially. So when our courts have declared that a proceeding for compensation, under the Workmen's Compensation Law, is a suit upon contract, it is only necessary to apply the facts to the law.

The Workmen's Compensation Law Provides for compensation to be paid to employees, based upon average weekly wages to the extent of 60% thereof, for three classes of injuries, which may be divided into general injuries, specific injuries and for a hernia, resulting from injuries sustained in the course of employment. In the first class the Act provides that the compensation may be increased or diminished according to the conditions existing from time to time. In this class of injuries the rights of the parties are

not fixed absolutely at any particular time, necessarily. In the second class the rights of the parties are fixed immediately upon the occurrence of the accident resulting in the injuries. It is true that the law provides certain things to be done by the injured employee, as well as by the employer, and the insurer, before the last named party is compelled to pay any part of the compensation, but when the facts have been judicially ascertained and declared, that an injury has been sustained by an employee in the course of his employment, where the provisions of the law are present, the duty of the tribunal, charged with the duties of executing the law, is more ministerial than discretionary. The law provides that where the employee had lost the sight of one eye the employee is entitled to be compensated at the rate of 60% of his average weekly wages during 100 weeks. Under the provisions of the law, where the facts are as detailed in the certificate, the injured employee, from the moment he received the injury, became entitled, under the contract, to which he was a party, from the party insuring his employer against loss, resulting from the hazard, incident to the employment of his employee, to the sum of money mentioned in the law to be due under the conditions established. No fact or circumstance transpiring after the happening of this accident and the infliction of this particular injury could change the amount thus fixed. The loss of the sight of the eye might not have affected the earning capacity of the employee, and yet the latter would be entitled to this fixed sum.

Adopting as correct the principle announced by the Supreme Court in Middleton v. Texas Power and Light Company, supra, to the effect that the Workmen's Compensation Law is in the nature of a tripartite contract between the employee, the employer and the insurer, it is only necessary, in construing a transaction arising under this law, to keep in mind the nature and character of this particular contract. A contract has been defined to be a "deliberate engagement between competent parties to do or to abstain from doing some act." Pelham v. State, 30 Texas, 426. It appears that by the terms of Section 12, Article 8306 the parties to this contract have agreed that one of them, the employee, shall receive in lieu of all other compensation, except medical aid, hospital services and medicine, a weekly compensation equal to 60% of the average weekly wages of such employee for the loss of the vision of one eye not less than $7.00 per week nor exceeding $20.00 weekly for 100 weeks, which, according to the facts in this case, amount to $20.00 per week for 100 weeks. Had another party to this contract, to-wit, the insurer, agreed in writing, executed and

delivered to the employer, by the terms of which it was stipulated that the employee should receive at the end of each week for 100 weeks $20.00, we would have a situation substantially the same as presented by this record. With such an instrument in his possession, based upon the admitted facts shown by the record, the employee would have all the evidences of the right to the possession of a valuable piece of property, except the one denied to him by this compensation law, that is, the right to assign it. The fact that the employee should unfortunately depart this life, pending the arrival of the any or more several periods when he would have the right to demand and receive the several installments due him, does not affect the character of that right. It clearly could not, and should not, under all the rules of law relating to contracts, forfeit this right, by reason of the happening of an event not written in the contract, and not contemplated by the parties, to-wit, his death. But for the fact that he, by the terms of the contract is deprived of the right to assign the written instrument, he could transfer it to another for a valuable consideration, or give it away and, according to the rules governing contract, the transferee or donee would occupy the same relation to the instrument as the original employee occupied. It is true that the general rule is, that which is not assignable is not inheritable, but all the courts, which have discussed this character of law, with reference to this particular provision, hold that the right to compensation, for specific injuries, does not die with the employee, and also hold the fact that this right is not assignable is not a material one in determining its inheritability. The right to compensation for a specific injury, under this law, is analogous to that which arises out of a written agreement between two parties, wherein each has obligated himself to do certain things, to the effect that the failure to do one or more of these things, by either one of the parties, shall entitle the other party to a certain sum of money as liquidated damages. So in the case at bar, the parties to this agreement have agreed that in the event the employees shall suffer the loss of the vision of one eye, then, in that event, he shall be entitled to receive a certain sum of money. The fact that after he has sustained this loss he shall die before the money is due, according to the contract, or before the time should arrive when any part of the money is due, in no wise lessens or impairs the obligation of the other party and, of course, being under the obligation to pay the money, the law supplies the party to whom it should be paid, the heir or heirs of the deceased employee, according to the law of descent and distribution.

Upon the happening of the accident, resulting in the loss of an eye, under the circumstances detailed in the certificate, the injured employee acquired a vested right to demand and receive from the insurer 60% of his average wages for a period of 100 weeks, payable in weekly installments, which in this case seems to be an aggregate of $2,000.00. The Supreme Court of Indiana in Kunkalman v. Gibson, 171 Ind., 103, 84 N. E., 987, in discussing this question, among other things, said:

"We think it is always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided and not followed. It has been condemned by many text-writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon consideration of the most convincing character and the gravest moment."

Now Article 8396, Section 7, specially provides that when an employee suffers "the total and permanent loss of the sight of one eye" the compensation shall be paid at the rate of "sixty per cent of the average weekly wages during 100 weeks." The statute does not say this shall be paid only in the event the employee lived 100 weeks. It is not made contingent upon the employee's life expectancy. It is an unconditional, fixed definite obligation to pay for 100 weeks, without any limitations or conditions; and the courts have no authority to curtail the clear and express purport of a mandatory statutory requirement. In Haugse v. Sommers Bros. Mfg. Co., 43 Idaho, 450, 254 Pac., 212, the Supreme Court of Idaho, among other things, said on this subject:

"The injury consisted in the loss of an eye by enucleation. * * * The Casualty Company argues that it is the policy of the Workmen's Compensation Law that compensation be paid the workman only during the period of his incapacity for work, and that on a termination of incapacity compensation should cease. It is true that, under C. S. Sec. 6231, as amended, it is provided that, where the injury causes total disability for work, 'the employer during such disability * * * shall pay the injured employee * * *' and that similar lan-

guage is found relating to injuries causing partial disability. C. S. Sec. 6233.

"There is also contained in each of the Sections a proviso that 'in no event shall the weekly payments continue after the disability ends.' However, these sections do not cover the injuries sustained by the workmen in this case. On the contrary C. S. Section 6234 is applicable to this particular injury. That section provides:

" 'In the case of the following injuries the compensation shall be fifty-five per centum of the average weekly wages, but not more than the weekly compensation provided in Section 6231, in addition to all other compensation, for the periods stated against such injuries respectively, to-wit: * * * One eye by enucleation, 120 weeks.' "

" 'There is nothing in C. S. Sec. 6234, or in the entire act, providing for a cessation of payments, for the loss of an eye by enuclea-. tion, on the death of the injured person. * * * and the casualty company was not released from its obligation by the death of the injured workman.' "

" 'It is also contended that the right to the payment provided in the agreement did not survive Haugse, in that the statute prohibits the assignment of claims for compensation. Ordinarily causes of action which are not assignable do not survive. 1 C. J., 175. Claims for compensation are based on the statute, and are made non-assignable for the benefit of those entitled to compensation. But it does not follow from the fact that such claims may not be assigned that the rights we are here concerned with do not survive.' "

The Supreme Court in the State of Connecticut in Forkas v. International Silver Co., 100 Conn., 417, 123 Atl., 831, reached the same conclusion upon the same state of facts. The Supreme Court of the State of Wisconsin in City of Milwaukee v. Roth, 185 Wis., 307, 201 N. W., 251, held that there arose in favor of the injured employee a right under contract, as distinguished from an action in tort, for compensation upon the happening of the injury and that upon the death from other causes of the injured employee, there survived to those entitled to receive the unpaid balance the right to demand it, which in that case was the widow of the injured employee.

In Wenning v. Turk, 78 Ind. App., 355, 135 N. E., 665, the Supreme Court of Indiana said:

"We hold that where an injured employee dies from causes other than the one for which he has been allowed compensation the next

of kin are entitled to an award, directing that the unpaid balance of the compensation accruing after the death of the employee be paid to them."

In Wangler etc. Co. v. Industrial Commission, 287 Ill., 118, 122 N. E., 367, the Supreme Court of Illinois said:

"Compensation under the act in question is analogous to and is to take the place of damages at common law and under the statute. While the right to compensation is not a subject of bequest of the beneficiary, but continues in the dependents of the beneficiary only in the manner provided by said act, yet such right to compensation, when determined according to law, is no less a vested right, and one that can be affected only by the act of the Legislature that gave it."

"The right to compensation being a vested right of the beneficiary, the liability of the employer, on the vesting of that right, becomes fixed, and in the absence of an act of the Legislature under which such right becomes divested, we are unable to see wherein the conduct of the beneficiary can be said to affect such liability on the part of the employer."

To the same effect is the conclusion reached by the Supreme Court of Ohio in State v. Industrial Commission, 92 Ohio, 434, 111 N. E., 299, and by the Supreme Court of Maryland in State Accident Fund v. Jacobs' Admr., 140 Md., 622, 24 A. L. R., 434, 118 Atl., 159.

While the exact question was not involved in the case of Moore v. Lumbermen's Reciprocal Association, 258 S. W., 1050, 262 S. W., 472, yet the question involved in that case was a very similar one to that propounded in the certificate. In the case last cited this Section of the Commission, speaking through Judge Hamilton, held that upon the death of the beneficiary, which in that instance was the widow of the deceased employee, her right to that compensation, which was unpaid at her death, descended and vested in her heirs, saying among other things in a well considered opinion:

"We think the statute created a liability upon the association, immediately upon the death of Pete Sanders, for payment according to the terms of the statute and a right in Minnie Sanders to that payment. The liability of the association was of the nature of a debt, and the right of Minnie Sanders was that of a creditor in such debt. It is not questioned that she was the beneficiary. The statute, in the event of death resulting from the injury, expressly states the amount of compensation, within limits to which she was entitled. It is not to be calculated with reference either to her necessity or to her expectation of life. It is subject to a maximum

and a minimum, but it is not to be proportioned to her life expectancy, in any degree. * * * The statute created a debt on the death of Pete Sanders owing by the association to Minnie Sanders. Being such, it became a vested right transmissible to the heirs of Minnie Sanders. The statute orders the payment of a definite sum, "Sixty per cent of his average weekly wages," subject to the maximum and the minimum also definite, for a period of three hundred and sixty weeks from the date of the injury," to a person made definite by the statute. It provides every element of a vested right. A fixed amount is awarded to a definite person, as a matter of right, without suggesting in any way an abatement on the death of the person to whom it is made prior to its full payment. * * * No authority exists in the courts under any rule of statutory construction to change the words used by omission or addition. Compensation is awarded in a definite sum with no conditions attached, except that the payments are to be made weekly. That it is not all due and payable at once does not argue that the present right to the payments when they do mature is not vested right. Provisions to restrain the beneficiary from squandering the compensation money do not prevent the right to it from vesting in him."

In Standard Accident Insurance Company v. Williams, 14 S. W., (2d) 1015, this Section of the Commission held that the loss of a specific member of the body is "definitely and arbitrarily fixed by the statute itself and the opinion in Petroleum Casualty Company v. Seale, 13 S. W., (2d) 364 is to the same effect. In Texas Employers Insurance Association v. Lawrence, 14 S. W., (2d) 949, wherein a writ of error was refused the Court of Civil Appeals follows the opinion in the case of Moore v. Lumbermen's Reciprocal Association, supra.

Some of the authorities, outside of those from which we have quoted, are not in accord with the conclusion we have reached. These authorities are collated in Vol. 15, American Law Reports, p. 81 and Notes, and Vol. 51, American Law Reports, p. 1446. Of course, each must be read in the light of the language used in the various statutes, which it is discussing and construing. However, we think the better rule is as stated by those decisions from which we have quoted, including those from our own State.

We therefore recommend that the question be answered in the affirmative.

Opinion of the Commission of Appeals answering certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.