**SOUTHERN UNDERWRITERS et al. v. LEWIS et al.**

No. 5776.

Court of Civil Appeals of Texas. Texarkana.

March 26, 1941.

Rehearing Denied April 17, 1941.

Will R. Saunders and W. E. Johnson, both of Dallas, for appellants.

Ed Yarbrough, of Henderson, for appellees.

JOHNSON, Chief Justice.

A. L. Lewis, while in the course of his employment with Hooks Brothers Machine Works on March 29, 1938, accidentally sustained a general injury resulting in disability for work. The Southern Underwriters, a reciprocal insurance exchange, was the compensation insurance carrier for said employer. Notice of the injury was duly given. After failure of the insurer to pay him compensation (except for one week, $14.19), Lewis filed his claim with the Industrial Accident Board. Upon notice and hearing the Board entered its final award on August 3, 1938, ordering The Southern Underwriters to pay Lewis compensation for total disability at the rate of $14.19 per week for a period of 52 weeks consecutive from the date of his injury, unless changed by subsequent order of the Board. Lewis gave notice that he would appeal from the award. On August 22, 1938, Lewis filed suit in the District Court of Rusk County, cause No. 13809 on the

docket of said court, against "Southern Underwriters Corporation," a private corporation—a different and distinct party from "The Southern Underwriters." In his petition in said cause Lewis alleged the essential and proper facts as would be alleged in a suit appealing from and seeking to set aside the award of the Board and to recover judgment upon his claim for compensation, except that Southern Underwriters Corporation· was the party defendant sued and served with citation. The Southern Underwriters, the insurer, was not sued or served with citation in that suit. On September 6, 1938, the defendant "Southern Underwriters Corporation" filed its answer in said suit, containing a general demurrer, general denial, and a sworn plea reading as follows: "3. For further answer herein, if further answer be required, this defendant, Southern Underwriters Corporation, denies that there has ever been rendered a valid and legal award of the Industrial Accident Board in favor of the plaintiff A. L. Lewis against this defendant, Southern Underwriters Corporation; and this defendant Southern Underwriters Corporation, denies that there has ever been filed by the plaintiff, A. L. Lewis, any legal and valid claim for compensation against this defendant, Southern Underwriters Corporation, either with it, or with the Industrial Accident Board of the State of Texas; all of which facts this defendant, Southern Underwriters Corporation stands ready to verify."

The Southern Underwriters filed no plea or answer, or made any appearance in said suit. On October 15, 1938, Lewis filed a motion asking that said suit be dismissed "because said suit was not filed against the proper and right party." The judgment of the court ·sustaining said motion and dismissing the suit reads: "The above and foregoing motion having been presented to the Court, on this 15th day of October, A. D. 1938, and it appearing to the Court that the Southern Underwriters Corporation was not the proper party to be sued herein and that a mistake was made in the filing of said suit against the Southern Underwriters Corporation instead of filing same against The Southern Underwriters; it is the opinion of the Court and the Court so finds that the motion should be sustained and said suit be dismissed. It is the order, judgment and decree of the Court that said motion be sustained and said suit be dismissed and that the defendant Southern Underwriters Corporation recover all costs herein expended."

The Southern Underwriters did not appeal from the award of the Board entered August 3, 1938, nor did it pay or offer to pay at any time any of the compensation therein specified. After said suit No. 13809 was dismissed, Lewis made demand on The Southern Underwriters to pay the compensation as specified in said award of the Board, and it still failed and refused to do so. Lewis then declared all the weekly payments awarded by the Board due, and on November 30, 1938, filed the present suit, No. 14027, against The Southern Underwriters to recover the full amount of the award (less $14.19) and 12% penalty and $500 attorney's fees. The United Employers Casualty Company was also made a party to the present suit upon allegations to the effect that it had taken over the assets and assumed the liabilities of The Southern Underwriters. On December 31, 1938, The Southern Underwriters answered in the present suit by general demurrer and general denial. On the same day the United Employers Casualty Company filed motion to quash citation, and subject thereto, answered by general demurrer and general denial. On January 8, 1939, after filing and before trial of the present suit, Lewis died. His death was caused solely by an injury received subsequent to and not connected with the injury received on March 29, 1938. On January 23, 1939, Mozell Lewis, the surviving wife of A. L. Lewis, filed a written motion in the present suit, No. 14027, suggesting the death of A. L. Lewis and that the cause of action alleged in the present suit is one that survived Lewis' death and became the property of herself and their only child, Jimmie Lewis, a minor, and prayed that said Mozell Lewis, individually and as next friend of said minor, be substituted as plaintiff and allowed to prosecute the suit. The motion was heard and granted. On January 24, 1939, by leave of the court, Mrs. Lewis for herself and as next friend of the minor, Jimmie Lewis, filed her petition in cause No. 14027, amending or in lieu of the petition thereinbefore filed by A. L. Lewis. She alleged the facts substantially as alleged in the original petition seeking judgment for the full amount of the award (less $14.19) and 12% penalty and $500 attorney's fees. Among other additional facts she alleged: "This plaintiff, Mozell Lewis, is the surviving wife of A. L. Lewis, deceased, and the said Jimmie

Lewis, is the only child born to them, and he is a minor. That the said A. L. Lewis did not own any property at the time of his death, either real or personal, and there is no necessity for an administrator of his said estate. That this cause of action survives and that the money recovered in this suit, if any, will be the property of this plaintiff and her minor child, Jimmie Lewis."

The defendants answered said petition by amended original answer, containing plea in abatement, a general demurrer, special exceptions, general and special denials. The plea in abatement, demurrer and special exceptions were overruled. The cause was submitted to the jury upon one special issue inquiring: "From a preponderance of the evidence in this case what do you find to be a reasonable attorney's fee, if any, for the plaintiff's attorney for representing plaintiffs in cause No. 14,027, now on trial before you?" The jury answered, "$145.00." Upon the verdict of the jury, and findings of the court from uncontroverted facts expressed in the judgment, the court entered judgment in favor of plaintiffs and against defendants for $723.69, and for $86.48 as penalties and for $145 for attorney's fee. Defendants have by way of writ of error appealed to this court. The parties will be referred to as appellants and appellees.

■ Appellants' first proposition complains of the action of the trial court in overruling their plea in abatement, motion for a directed verdict, and motion for judgment non obstante veredicto. The contention is made, in substance, that when A. L. Lewis filed suit No. 13809 against "Southern Underwriters Corporation" the district court acquired jurisdiction over "the Southern Underwriters," under the rule governing misnomer of parties defendant; that the appeal by A. L. Lewis from the award of the Board having thus been perfected, the award was thereby nullified; that the Board having lost and the district court having acquired jurisdiction over the claim and the parties thereto, the subsequent dismissal of said suit on October 15, 1938 (more than 20 days after notice of appeal from the award of the Board), left Lewis without any cause of action or remedy whatsoever, wherefore Lewis had no right to thereafterwards demand payment of the claim or to declare the award matured or to prosecute suit to collect same. Appellants cite the cases of Adams v. Consolidated Underwriters, 133 Tex. 26, 124

S.W.2d 840; Zurich General Accident & Liability Ins. Co. v. Rodgers, 128 Tex. 313, 97 S.W.2d 674; Texas Reciprocal Ins. Ass'n v. Leger, 128 Tex. 319, 97 S.W.2d 677. The last two cases cited hold, in substance, that where a claimant has filed suit in a court of competent jurisdiction against the insurer to set aside an award of the Board and to recover judgment upon his claim for compensation, and the insurer has been served with citation or has answered, so that the court has acquired jurisdiction of the cause and of the parties, the award of the Board is thereby abrogated; and that when the claimant has thereafterwards allowed such suit to be dismissed, he can not subsequently file a separate suit to mature the award. But the question here is: Did the court acquire jurisdiction over the insurer, "The Southern Underwriters," in said cause No. 13809? The facts with respect thereto are undisputed. They show that "Southern Underwriters Corporation" and "The Southern Underwriters" are two different and distinct parties; that Southern Underwriters Corporation is the party which was in fact named as defendant and served with process and which answered in said suit; that The Southern Underwriters was not named as defendant and was not served with process and did not answer or otherwise make any appearance in said suit. The attorney for appellees testified that the suit was filed against Southern Underwriters Corporation by mistake; that he intended to file the suit against The Southern Underwriters; that he did not discover that he had filed the suit against the "wrong party" until after Southern Underwriters Corporation filed its answer, that he then filed the motion to dismiss said suit; that the mistake in filing the suit against Southern Underwriters Corporation instead of against The Southern Underwriters was caused by not having the award of the Board before him at the time the petition was drawn. So, the facts here show that through mistake the wrong party was in fact sued and served; that the party sued and served was a different party from that intended to be sued; and that the party intended to be sued was not in fact sued or served, nor did it in any manner make an appearance, nor did the court in any other manner acquire jurisdiction over it. Expressed in other words, the mistake here shown is that a wrong party was in fact sued and served by its correct name; and that it is not a case in which the right party

or party intended to be sued was in fact sued and served by a wrong name. For support of their contention that the court acquired jurisdiction over The Southern Underwriters in said suit filed by Lewis against Southern Underwriters Corporation, appellants rely upon the case of Adams v. Consolidated Underwriters, supra. In that case an award was made by the Board in favor of Adams, the injured employee, against Consolidated Underwriters, the insurer. Adams gave notice of appeal from the award, and in due time filed suit to set it aside and to recover judgment upon his claim for compensation. In his original petition Adams made an error in the name of the insurer by inserting the word "Casualty" between the words "Consolidated" and "Underwriters," and thereby named "Consolidated Casualty Underwriters" as defendant, instead of "Consolidated Underwriters," the correct corporate name of the insurer. The petition named A. D. Robertson of Beaumont, Texas, agent of defendant upon whom service of citation could be had. Citation was duly issued on said petition and served on said A. D. Robertson as agent of the defendant. A. D. Robertson filed an affidavit stating that he was not the agent of Consolidated Casualty Underwriters or in any way connected with Consolidated Casualty Underwriters. Adams then filed an amended petition in which he correctly named the defendant as "Consolidated Underwriters" and named the same A. D. Robertson as agent of the defendant upon whom service could be had. Citation was issued on said amended petition and served on said A. D. Robertson as agent of Consolidated Underwriters. The amended petition, which for the first time named Consolidated Underwriters as the defendant, was filed more than 20 days after Adams had given notice that he would appeal from the award of the Board. In answer to the petition Consolidated Underwriters filed its plea in abatement, contending that the suit against it was not filed until the filing of said amended petition by Adams. The Supreme Court in sustaining the action of the trial court overruling the plea in abatement held that the facts of that case came within the following rule [133 Tex. 26, 124 S.W.2d 841]: "* * * When a corporation intended to be sued is sued and served by a wrong corporate name, and such corporation fails to appear and plead such misnomer in abatement, and suffers judgment to be obtained, it is bound by such judgment and in all future litigation it may be connected with such suit or judgment by proper averments; and when such averments are made and proved the corporation intended to be named in the judgment is affected or concluded to the same extent it would have been if it had been named and served by its true name." (Citing authorities in support of the rule.) But in holding that the court acquired jurisdiction over Consolidated Underwriters by the filing of Adams' original petition wherein as defendant its corporate name was incorrectly stated as Consolidated Casualty Underwriters, and the issuance of citation on such petition, and the service of same on the agent of Consolidated Underwriters, Judge Critz makes it clear in the opinion that one of the essential facts upon which the decision is based is: "That Consolidated Underwriters was actually served with citation by service thereof upon its agent, A. D. Robertson." That essential fact is wanting in the present case, and for that reason we hold that the court never acquired jurisdiction over The Southern Underwriters in said cause No. 13809.

 Under their second proposition appellants contend that since the incapacity sustained by A. L. Lewis resulted from a general injury as distinguishable from a specific injury and the compensation awarded therefor was, according to the order of the Board, made due and payable in weekly installments of $14.19 for 52 consecutive weeks from and after March 29, 1938, and only 41 weeks had expired at the time of his death, on January 8, 1939; and his death not being caused by the injury for which the compensation was awarded; therefore, appellants were liable, if for any amount, only for $581.79, or the 41 weeks of the award expiring before Lewis' death, and were not liable for the 11 weeks which, according to the terms of the award, had not matured at the time of Lewis' death. Our courts hold that where an employee has received a specific injury, such as the loss of an eye, and the Board has made an award therefor ordering compensation to be paid in weekly installments, his right to the full amount of such compensation is a vested right; and that should such injured employee die prior to expiration of the compensation period, the insurer is liable to his heirs for the installments accruing after his death. Federal Surety Co. v. Pitts, 119 Tex. 330, 29 S.W.2d 1046. But

it is further held that where an employee has received a general injury resulting in incapacity for work and the Board has made an award therefor ordering compensation to be paid in weekly installments, such employee has no vested rights in the full amount of the award, but that his rights become vested in the installments only as they become matured; and that if such employee dies before expiration of the compensation period the insurer is not liable to his heirs for the unmatured installments. Texas Employers Ins. Ass'n v. Phillips, 130 Tex. 182, 107 S.W.2d 991. The facts of the present case show that Lewis received a general injury resulting in total incapacity for which the Board entered an award ordering the insurer to pay him compensation at the rate of $14.19 for the period of 52 consecutive weeks from and after March 29, 1938, the date of his injury; that the insurer did not appeal from the award; that Lewis made an unsuccessful effort to appeal by filing suit against Southern Underwriters Corporation, cause No. 13809; that after discovering that he had not sued or served the insurer but that a different and wrong party had been sued and served, he dismissed said suit; that the insurer had not complied with or offered to comply with the orders of the Board; that after dismissal of said suit Lewis made demand upon the insurer to comply with the award of the Board; thereafter the insurer, without any justifiable cause, failed and refused to comply with the award; that Lewis then exercised his statutory right to mature the entire claim, under the provisions of Section 5a of Article 8307, R.C.S., and thereupon filed the present suit to collect the full amount, together with 12% penalty and a reasonable attorney's fee. The pertinent part of Article 8307, Sec. 5a, reads as follows: "Where the board has made an award against an association requiring the payment to an injured employé or his beneficiaries of any weekly or monthly payments, under the terms of this law, and such association should thereafter fail or refuse, without justifiable cause, to continue to make said payments promptly as they mature, then the said injured employé or his beneficiaries, in case of his death, *shall have the right to mature the entire claim* and to institute suit thereon to collect the full amount thereof, together with twelve per cent penalties and attorney's fees, as herein provided for.

Suit may be brought under the provisions of this section, either in the county where the accident occurred, or in any county where the claimants reside, or where one or more of such claimants may have his place of residence at the time of the institution of the suit." (Italics ours). So, it appears that by force of the above statute applicable to the facts here presented, the full amount of the claim had been reduced to a matured debt due on the part of the insurer, and to the payment of all of which Lewis had a vested right prior to his death. Therefore the insurer was not relieved of the 11 payments which otherwise would not have matured until after Lewis' death. The cause of action being to enforce a vested right, a matured debt, it survived Lewis' death.

 Appellant's third proposition complains of the action of the trial court in overruling their motion for a directed verdict and for judgment non obstante veredicto, because appellees failed to show that there was no necessity for administration upon the estate of A. L. Lewis, and that without showing such facts appellees had no right to prosecute the present suit. The testimony shows that the property owned by Lewis at the time of his death consisted of the $723.69 due him by appellants on his compensation claim in the present case, and that he owned a small "shack" of the probable value of $5; that he owed $75 borrowed money; and some doctor bills and the expenses of his last illness and burial, which were not shown to have been paid. These facts show necessity for administration in the sense that they are sufficient to authorize the granting of letters of administration upon the estate. But notwithstanding the fact that there was necessity for an administration upon the estate of A. L. Lewis, his surviving wife, being the survivor of the community estate of herself and her deceased husband, was properly substituted as plaintiff to prosecute the present suit—and the fact that the minor child was also made a party plaintiff would not warrant a reversal of the case. The claim here sued upon was the community property of A. L. Lewis and his surviving wife, Mozell Lewis, and upon his death Mrs. Lewis became entitled to one-half the property and the minor child to the other one-half, subject to the debts against same. Pickens v. Pickens, 125 Tex. 410, 83 S.W.2d 951. The surviving spouse, even in the absence of having qualified under the statute,

is given broad powers to possess, control and dispose of the community property in settlement of community affairs. Davis v. Magnolia Petroleum Co., Tex.Civ.App., 105 S.W.2d 695, affirmed by Commission of Appeals, 134 Tex. 201, 134 S.W.2d 1042. A primary purpose of administration is the protection of creditors of the estate. In cases where the question of necessity for administration has been raised by a debtor being pressed for payment of a debt due the community estate, it is uniformly held that the unqualified community survivor may prosecute the suit, and in doing so that she exercises powers similar to that of a surviving partner. Walker v. Abercrombie, 61 Tex. 69; Missouri, K. & T. Ry. v. Groseclose, Tex.Civ.App., 134 S.W. 736, writ refused; Western Union Tel. Co. v. Kerr, 4 Tex.Civ.App. 280, 23 S.W. 564; San Antonio & A. P. Ry. Co. v. Evans, Tex.Civ.App., 198 S.W. 674; Gulf, W. T. & P. Ry. v. Goldman, 87 Tex. 567, 29 S.W. 1062; Evans v. Evans, Tex.Civ.App., 249 S.W. 1097. In Missouri, K. & T. Ry. v. Groseclose, supra [134 S.W. 739], writ refused, it is held: "The second, third, fourth, and fifth assignments of error complain of the court in not sustaining general and special demurrers which attack the legal right of plaintiffs to maintain this suit. The first proposition made is the overruling of a general demurrer is error because the petition does not allege there was no administration on the estate of W. M. Groseclose, deceased, and no necessity therefor. The damages sought to be recovered, if any, were community property of W. M. Groseclose and his wife. The wife having an interest in such cause of action, it survived to her as community property, and, having an interest therein, she was entitled to maintain the suit, and it was not necessary to allege there was no administration on the estate of W. M. Groseclose, nor necessity for any. [Western Union] Telegraph Co. v. Kerr, 4 Tex.Civ. App. 280, 23 S.W. 564. The other proposition is that the children named in the petition were neither necessary nor proper parties to this suit. While we are of the opinion that the wife could have maintained this suit alone, as community survivor, and recovered all the damages accrued, yet allowing the children to prosecute with her as plaintiffs was not such error as will cause a reversal of the case. Faulkenbury v. Wells, 28 Tex.Civ.App. 621, 68 S.W. 327; [St. Louis Southwestern] Railway Co. v. Carwile, 28 Tex.Civ.App. 208, 67 S.W.160."

By their fourth proposition appellants present the contention that the trial court erred in overruling their requested special issue No. 1 reading: "Do you find from a preponderance of the evidence, if any, that the defendant did not have justifiable cause for refusing to make any weekly payments prior to September 26th, 1938, to A. L. Lewis, as ordered by the award, if any, of the Industrial Accident Board of the State of Texas, dated August 3rd, 1938, if they did so fail?"

 The rule applicable to an injured employee's failure "for good cause" to file his claim with the Board within six months from date of injury, is that such good cause must continue to exist to the time of filing his claim. Petroleum Casualty Co. v. Dean, 132 Tex. 320, 122 S.W.2d 1053. Applying the same principle to the insurer asking to be excused for its failure to comply with the award of the Board upon the grounds of "justifiable cause," we think the existence of such justifiable cause must have continued to the date the injured employee filed his suit to collect the alleged matured award. Therefore, if appellants' said requested special issue had been raised in the evidence and had been submitted, and had the jury answered it favorably to appellants, thus excusing appellants' failure to September 26, 1938, such finding would not have excused appellants' failure to comply with the award for the remaining 65 days, to November 30, 1938, the date Lewis filed the present suit to collect the award. No issue was submitted and none requested, and no assignments of error filed in this court complaining of the trial court's failure to submit an issue inquiring whether the insurer had justifiable cause for its continuous failure to comply with the award to the time suit was filed to collect same. If such an assignment of error had been properly preserved and filed in this court, it could not have been sustained, because it appears from the record that the issue was not raised in the evidence. The attorney who filed the suit for Lewis against Southern Underwriters Corporation, cause No. 13809, testified that if the weekly installments awarded by the Board had been tendered him he would not have accepted them during the pendency of said suit. Appellants did not introduce any testimony showing any willingness to comply with the award of the Board, or any part of it, during the pendency of said suit or at any time since. But we think the testi-

mony of the attorney above mentioned is sufficient to raise the issue of justifiable cause for failure of appellants to comply with the award during the pendency of said suit. As raising an issue of justifiable cause for their refusal to comply with the award after dismissal of said suit, appellants rely upon the single fact that the attorney for Lewis did not notify appellants' attorneys that said suit had been dismissed. Appellants do not claim that there was any agreement or understanding whereby said attorney should have notified them of the dismissal of said suit. The attorney breached no duty, legal or otherwise, in not notifying them that the suit had been dismissed. Attorneys for appellants are the same attorneys who defended Southern Underwriters Corporation in said suit. After dismissal of said suit the attorney for Lewis wrote to The Southern Underwriters. He offered a copy of his letter in evidence. Appellants objected to its introduction. The objection was sustained. He then introduced in evidence the reply of The Southern Underwriters to said letter. The reply was dated November 23, 1938, and reads:

"We have your letter of November 19, 1938, regarding the captioned matter wherein you inquire as to whether or not we are willing to pay the Board's award without you entering suit.

"We are referring this matter to our attorneys at Dallas today for their recommendation and we should hear from them within the next few days and will advise you our definite attitude.

"We ask that you kindly withhold taking any action until we can hear from our attorneys."

On November 26, 1938, attorney for appellees received the following letter from the attorneys for appellants:

"Mr. Edward Yarbrough,
"Attorney at Law
"In Re: Claim No. 14511 A. L. Lewis v. Hooks Bros.
"Dear Sir:
"Your letter of November 19th addressed to The Southern Underwriters at Houston, Texas, relative to the above case has been referred to us for answer.

"In reply thereto please be advised that we are neither denying nor accepting liability in this case."

Appellants offered no testimony showing that their refusal to comply with the award after dismissal of said suit No. 13809 was for any cause other than their contention that, as a matter of law, they were not liable for any part of the claim because of the dismissal of said suit. Appellants offered no testimony showing that they did not in fact know of the dismissal of the said suit or that the want of such knowledge was in fact a cause of their failure to comply with the award. In the absence of such supporting testimony, we do not think that the fact alone that the attorney for appellee did not notify appellants or their attorneys that cause No. 13809 had been dismissed is of itself sufficient to raise an issue of justifiable cause for appellants' refusal to comply with the award.

The judgment of the trial court will be affirmed.