COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-051-CV
 
 
SCOTT 
MASON PRATHO, M.D.                                                           
APPELLANT AND
APPELLEE
 
V.
 
LUPE 
ZAPATA, INDIVIDUALLY                                                               
APPELLEE AND
AND 
AS NEXT FRIEND FOR SABRINA                                                         
 APPELLANT
ZAPATA 
AND GREGORY ZAPATA, AND
AS 
HEIR OR REPRESENTATIVE OF THE
ESTATE 
OF REYNALDO ZAPATA, DECEASED
 
 
------------
 
FROM 
THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
        Appellant 
Scott Mason Pratho, M.D. appeals from a judgment rendered on a jury verdict 
awarding damages to the survivors of his deceased patient, Reynaldo Zapata, 
after Dr. Pratho failed to diagnose and treat Zapata’s heart condition. Lupe 
Zapata also appeals the trial court’s judgment notwithstanding the verdict 
invalidating the jury’s award of damages for pain and suffering sustained by 
Zapata before his death. Because we hold that Mrs. Zapata produced legally 
sufficient evidence of proximate cause, and because we further hold that she 
established standing to sue on behalf of Zapata’s estate at the time of trial, 
we will affirm the trial court’s judgment in part and reverse in part.
        Forty-nine-year-old 
Reynaldo Zapata died at home of a heart attack on May 27, 1997. In the two weeks 
before his death, Zapata had been evaluated and treated by two emergency room 
physicians at Harris Methodist Southwest Hospital and a family practitioner, all 
of whom failed to diagnose Zapata’s heart problem: unstable angina. Zapata was 
first seen by emergency room physician Brett Landon Cochrum, M.D., at Harris 
Methodist on May 19, 1997, where he complained of a burning throat and tingling 
in his right arm. Dr. Cochrum concluded that Zapata was suffering pain from an 
upper respiratory infection and treated him accordingly.
        Zapata 
returned to the emergency room the next day, May 20, 1997, where he was seen by 
Dr. Pratho. Dr. Pratho’s assessment was that Zapata suffered from 
“[n]onspecific neck pain possibly related to cervical disc disease.” Dr. 
Pratho prescribed Zapata pain medications and steroids, placed his neck in a 
soft cervical collar, and directed him to follow up with his family practitioner 
in “the next available appointment for reevaluation and possible work-up.”
        The 
following day, May 21, 1997, Zapata was seen by John E. Staniland, M.D., the 
partner of Zapata’s regular family doctor. Dr. Staniland diagnosed Zapata with 
“musculoskeletal pain radiating from the neck.” Dr. Staniland prescribed a 
narcotic pain medication, ordered an x-ray of Zapata’s neck, and referred 
Zapata to a neurologist. Zapata suffered a heart attack and died six days later.
        Zapata’s 
widow, on behalf of herself, her two children fathered by Zapata,[1] and Zapata’s estate, sued Harris Methodist and the three 
doctors,[2] alleging that the doctors’ failure to 
diagnose and treat Zapata’s heart condition proximately caused Zapata’s 
death and ensuing damages to his wife and children. After Mrs. Zapata settled 
during trial with Harris Methodist, Dr. Cochrum, and Dr. Staniland, the trial 
court submitted her claims against Dr. Pratho to the jury. The jury found Dr. 
Pratho negligent and further found that 30% of the negligence that caused 
Zapata’s death was attributable to Dr. Pratho.
I. DR. PRATHO’S APPEAL
        On 
appeal, Dr. Pratho argues that the judgment against him should be reversed 
because Mrs. Zapata did not produce legally sufficient evidence of proximate 
cause. Dr. Pratho acknowledges that there was expert testimony that the medical 
treatment by other defendants were proximate causes of Zapata’s death, but he 
claims there was no expert testimony that the treatment he provided was a 
proximate cause of Zapata’s death.  Furthermore, Dr. Pratho claims that 
the evidence failed to establish that he should have foreseen that his treatment 
would result in Zapata’s death.
        In 
determining a “no-evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding and disregard all evidence and 
inferences to the contrary.  Bradford v. Vento, 48 S.W.3d 749, 754 
(Tex. 2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 
(Tex. 1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 
(1951).  Anything more than a scintilla of evidence is legally sufficient 
to support the finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 
935 S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists 
if the evidence furnishes some reasonable basis for differing conclusions by 
reasonable minds about the existence of a vital fact. Rocor Int’l, Inc. v. 
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        In 
a medical malpractice case, a plaintiff must prove that the negligence of the 
defendant physician proximately caused the injury alleged.  Hart v. Van 
Zandt, 399 S.W.2d 791, 792 (Tex. 1965). To establish proximate cause, a 
plaintiff must show (1) cause-in-fact, i.e., that the defendant's negligence was 
a substantial factor in bringing about the injury and without which no harm 
would have occurred, and (2) foreseeability, i.e., that the defendant should 
have anticipated the danger that resulted from his or her negligence.  Arlington 
Mem’l Hosp. Found., Inc. v. Baird, 991 S.W.2d 918, 922 (Tex. App.—Fort 
Worth 1999, pet. denied).  The trier of fact may decide the issue of 
causation in medical malpractice cases based upon (1) scientific principles 
provided by expert testimony allowing the fact finder to establish a traceable 
chain of causation from the condition back to the event; (2) a probable causal 
relationship as articulated by expert testimony; or (3) general experience and 
common sense from which reasonable persons can determine causation. Marvelli 
v. Alston, 100 S.W.3d 460, 470 (Tex. App.—Fort Worth 2003, pet. denied) 
(citing Parker v. Employers Mut. Liab. Ins. Co. of Wis., 440 
S.W.2d 43, 46 (Tex. 1969)).
        Dr. 
Pratho argues that because Mrs. Zapata presented no expert testimony 
articulating a probable causal relationship between his treatment of Zapata and 
Zapata’s death, the evidence was legally insufficient to support the jury’s 
verdict against him.  Under Marvelli, however, this is only one 
manner of proving causation.  If the expert testimony presented by Mrs. 
Zapata established medical principles that allowed the jury to trace a chain of 
causation from Zapata’s death back to Dr. Pratho’s treatment of him the 
second time he visited the emergency room, then the jury had sufficient evidence 
before it of causation and its verdict will stand.  See id. at 470; Rocor 
Int’l, 77 S.W.3d at 262.
        At 
trial, Mrs. Zapata presented the expert witness testimony of William O’Riordan, 
M.D., a physician who is board certified in emergency medicine.  The expert 
witness testified that Zapata probably was suffering from unstable angina due to 
the following symptoms that Zapata exhibited when he was treated by Dr. Cochrum 
at his first emergency room visit:

        •      one 
and one-half weeks of waxing and waning symptoms with a variety of locations of 
discomfort;

        •      pain 
or discomfort and symptomology that increased with exertion;

        •      an 
EKG that was “highly suspicious for having an old inferior wall or old heart 
attack or a previous heart attack” and that contained “slightly down sloping 
or horizontal type[s] of changes”; and

        •      risk 
factors, including his male gender, obesity, and smoking.

The 
expert witness testified that Zapata presented symptoms similar to these to Dr. 
Pratho when Zapata returned to the emergency room the next day.
        In 
addition, the expert witness opined that both Dr. Cochrum and Dr. Pratho were 
negligent in failing to treat Zapata’s heart condition. In discussing Dr. 
Cochrum’s negligence, the expert witness explained the omissions made by Dr. 
Cochrum that formed the basis of his negligence opinion:
 
The 
presentation [of Zapata’s symptoms] required the patient being admitted into 
the hospital under a cardiologist’s care, and in the emergency department 
treating the patient by starting an IV, administering oxygen, finding out how 
much oxygen he had circulating in his blood through a pulse oxymeter, 
administering the Nitroglycerin, aspirin, a medication through the IV or by 
mounth to lower the blood pressure, and if the chest pain did not disappear, 
start intravenous Nitroglycerin. Also, blood thinners which were the standard at 
that time in the form of either a substance called Heparin or glomalocary 
(phonetic) Heparin should have been started.
 
The 
expert further testified that this negligence was a proximate cause of 
Zapata’s death. The expert witness did not, however, go on to state 
specifically that Dr. Pratho’s negligence was also a proximate cause of 
Zapata’s death.
        Nevertheless, 
we conclude that this expert testimony provides legally sufficient evidence of a 
causal relationship between Dr. Pratho’s treatment and Zapata’s death 
because the expert witness’s testimony set forth medical principles that, 
under the facts of this case, applied to both Dr. Cochrum and Dr. Pratho. The 
expert’s testimony provided evidence that Zapata exhibited certain symptoms of 
unstable angina both when he was treated by Dr. Cochrum and when he was treated 
by Dr. Pratho and that these symptoms required actions such as admitting Mr. 
Zapata to the hospital and consulting a cardiologist—actions that Dr. Pratho 
did not take.  Furthermore, the expert witness’s testimony provided 
evidence that the failure to take these actions caused Zapata’s death.
        Even 
so, Dr. Pratho argues that there is no evidence of proximate cause because there 
was no evidence of foreseeability. Dr. Pratho argues that Mrs. Zapata proffered 
no evidence that he should have reasonably foreseen that his specific treatment 
of Zapata—sending him home with instructions to follow up with his primary 
care physician—would lead to Zapata’s death.  Dr. Pratho argues that 
because Dr. Cochrum sent Zapata home only and did not additionally instruct him 
to see his primary care physician, Dr. Pratho’s course of treatment differed 
from Dr. Cochrum’s, so any causation evidence relating to Dr. Cochrum’s 
treatment is inapplicable to the differing treatment that Dr. Pratho provided to 
Zapata.
        This 
argument fails to acknowledge, however, that Dr. Pratho’s negligence and Dr. 
Cochrum’s negligence were the same: they both failed to provide proper medical 
care for Zapata’s unstable angina. Dr. Pratho committed the same negligent 
omissions that Dr. Cochrum committed; they both failed to admit Zapata to the 
hospital under a cardiologist’s care, and they both failed to treat Zapata in 
the emergency room by starting an IV, administering oxygen, measuring the amount 
of oxygen in Zapata’s blood, and administering blood pressure-lowering 
medication and blood thinners. While Dr. Pratho may have instructed Zapata to 
follow up with his primary care provider, this instruction does not ameliorate 
Dr. Pratho’s omissions in the emergency room—the type of omissions that, 
according to the expert’s testimony, were the cause of Zapata’s death.
        At 
trial, the court properly instructed the jury on the foreseeability element of 
proximate cause with respect to Dr. Pratho: “In order to be a proximate cause, 
the act or omission claimed of must be such that an emergency room physician 
using ordinary care would have foreseen that the event, or some similar event, 
might reasonably result therefrom.”  See Arlington Mem’l, 
991 S.W.2d at 922.  The expert witness testified at trial that Dr. Pratho, 
as an emergency room physician, should have had actual awareness of the risk 
that if Zapata had unstable angina and were sent home without treatment, his 
condition could lead to a heart attack and even death.
        Despite 
his argument to the contrary, Dr. Pratho did send Zapata home untreated; as the 
expert witness explained, the proper treatment of Zapata’s condition involved 
hospital admission, consultation with a cardiologist, and administration of 
oxygen and medicines in the emergency room, but Dr. Pratho sent Zapata home 
without taking any of these actions.  The mere fact that Dr. Pratho told 
Zapata to follow up with his primary care physician does not affect the 
awareness that sending Zapata home without treating his heart condition could 
lead to Zapata’s death.  We conclude that this evidence satisfies the 
legal definition of foreseeability, as the jury was properly instructed.  See 
id. Furthermore, the scientific principles established by the expert 
witness’s testimony allowed the jury to conclude that Dr. Pratho’s 
negligence proximately caused Zapata’s death because Dr. Pratho committed the 
same omissions that Dr. Cochrum committed—omissions that, according to the 
expert’s testimony, were a proximate cause of Zapata’s death.  
Accordingly, we overrule Dr. Pratho’s issue on appeal.
II. MRS. ZAPATA’S CROSS-APPEAL
        In 
a cross-appeal, Mrs. Zapata challenges the trial court’s grant of Dr. 
Pratho’s motion for judgment notwithstanding the verdict regarding the damages 
awarded by the jury to Zapata’s estate, in which Dr. Pratho argued that Mrs. 
Zapata failed to present evidence that she had standing to bring suit on behalf 
of Zapata’s estate.
        In 
her live petition at the time of trial, Mrs. Zapata pleaded that she had 
standing as an heir to assert claims on behalf of Zapata’s estate because no 
estate had been opened and no probate was necessary.  After trial, however, 
Mrs. Zapata requested leave to file an amended petition substituting her 
daughter, Sabrina Zapata Nava, as the plaintiff for claims brought on behalf of 
Zapata’s estate.  This motion for leave to file asserted that Sabrina had 
been appointed the administrator of Zapata’s estate and was therefore the 
proper plaintiff for the estate’s survival claims. The trial court judge 
refused Mrs. Zapata’s request for leave to amend, granted Dr. Pratho’s 
motion for JNOV regarding the estate’s recovery, and rendered a judgment for 
Mrs. Zapata that excluded the survival damages awarded by the jury to Zapata’s 
estate.
        Texas’s 
survival statute provides that a cause of action for personal injuries suffered 
by a person who has died survives to and in favor of the heirs, legal 
representatives, and estate of the injured person. Tex. Civ. Prac. & Rem. Code Ann. § 
71.021(b) (Vernon 1997). The estate of a person with a spouse and children who 
dies intestate passes to the decedent’s heirs: the spouse and children.  See 
Tex. Prob. Code Ann. §§ 37, 
38(b)(1) (Vernon 2003). Generally, however, only the personal representative of 
an estate is entitled to sue to recover estate property. Shepherd v. Ledford, 
962 S.W.2d 28, 31-32 (Tex. 1998). This general rule has specifically been 
applied by the Texas Supreme Court to survival actions.  See id.
        An 
exception to this general rule allows an heir, rather than the estate’s 
personal representative, to sue to recover estate property when the heir pleads 
and proves that there is no estate administration pending and none is necessary.  
See id.  Mrs. Zapata argues that she qualified under this exception 
to sue as an heir on behalf of Zapata’s estate and that the trial court erred 
in granting Dr. Pratho’s motion for JNOV because she established standing to 
bring claims on behalf of Zapata’s estate by presenting evidence that no 
estate administration was pending and none was necessary.
        A.     “Pending” 
estate administration
        Under 
the general rule applied in Shepherd v. Ledford, if an estate is pending, 
an heir does not have standing to sue on behalf of the estate because the 
estate’s personal representative generally has the exclusive right to bring 
such suits.  See id. at 31-32; Chandler v. Welborn, 156 Tex. 
312, 294 S.W.2d 801, 806 (1956).  Mrs. Zapata filed her application for 
letters of administration while the trial was taking place.  Therefore, if 
an estate is “pending” at the time a request for letters of administration 
is filed in probate court, Mrs. Zapata could not qualify at the time of trial to 
sue as an heir on behalf of Zapata’s estate.  Cf. Henry v. LaGrone, 
842 S.W.2d 324, 326-27 (Tex. App.—Amarillo 1992, no writ) (holding that the 
estate of an incapacitated person was pending before the probate court upon the 
filing of a motion for appointment of a guardian).
        The 
probate court did not issue the requested letters of administration naming 
Sabrina as personal representative of Zapata’s estate until September 12, 
2002—two months after the jury returned its verdict.  Consequently, 
Sabrina did not have standing at the time of trial to sue as an administrator on 
behalf of Zapata’s estate because the probate court had not yet appointed her 
administrator of the estate.  See Lorentz v. Dunn, 112 S.W.3d 176, 
179 (Tex. App.—Fort Worth 2003, pet. granted) (holding that plaintiff who was 
not named personal representative until twelve days after filing suit on behalf 
of the estate did not have standing at the time suit was filed). Therefore, if 
Zapata’s estate was “pending” upon the institution of proceedings in the 
probate court, at the time of trial there could have been no one with standing 
to sue on behalf of Zapata’s estate—no personal representative because none 
had yet been appointed, and no heir because an estate was pending in the probate 
court.
        The 
Probate Code does not explicitly define the moment at which an estate is 
“pending,” but section 160, titled “Powers of Surviving Spouse When No 
Administration is Pending,” provides that a surviving spouse has certain 
powers over community property “[w]hen no one has qualified as executor or 
administrator of the estate of a deceased spouse.” Tex. Prob. Code Ann. § 160(a).  
Under this section, then, “when no administration is pending” is “when no 
one has qualified as executor or administrator of the estate.”  Other 
sections of the Probate Code that reference an estate that is “pending” 
contemplate that a personal representative has already been appointed. See, 
e.g., id. §§ 177, 338, 460.  Furthermore, the mere filing of a 
proceeding in the probate court does not necessarily cause an estate to be 
“pending.”  See In re John G. Kenedy Mem’l Found., No. 
13-03-696-CV, 2004 WL 1335849, at *9 (Tex. App.—Corpus Christi June 16, 2004, 
orig. proceeding) (holding that a bill of review filed in probate court after 
the estate had been closed did not render the estate “pending”). Because the 
probate court must determine that an administration is necessary before issuing 
letters of administration, see Tex. 
Prob. Code Ann. § 88(d), instituting proceedings in the probate court by 
filing an application for letters of administration does not guarantee that a 
personal representative will be appointed.  If the court declines to 
appoint a personal representative, it is illogical to conclude that an estate 
was pending from the time of filing until the court’s refusal because this 
refusal indicates that no estate was necessary.
        Accordingly, 
we determine that an estate is not “pending” for purposes of applying the 
exception to the survival statute unless and until a probate court appoints a 
personal administrator of the estate. Therefore, no estate was pending either at 
the time Mrs. Zapata filed the survival cause of action or at the time of trial.
        B.     Necessity 
of estate administration
        Also 
under the general rule applied in Shepherd v. Ledford, an heir does not 
have standing to sue on behalf of the estate if an estate administration is 
necessary.  See 962 S.W.2d at 31-32.  The probate code 
specifically states that this “necessity” exists if two or more debts exist 
against the estate or if it is desired to have the county court partition the 
estate among the distributees.  See Tex. Prob. Code Ann. § 178(b).[3]  The supreme court has held that this “necessity” 
does not exist when all the estate’s debts have been paid and the decedent’s 
family has agreed upon a manner of distributing the assets of the estate.  See 
Shepherd, 962 S.W.2d at 33-34.
        At 
trial, Zapata’s lawyer asked the trial court during its case-in-chief to 
“take judicial notice of the fact that there is no estate pending,” but he 
also informed the trial court that he had filed an application for letters of 
administration in the probate court that had not yet been issued.  
Furthermore, at the hearing on Dr. Pratho’s motion for instructed verdict held 
after Mrs. Zapata rested her case, Zapata’s lawyer asked the court “to take 
judicial notice of the contents of the filings in the Tarrant County Probate 
Court. We have asked that an estate be opened in the name of The Estate of 
Reynaldo Zapata, Deceased. . . . So that’s pending.”
        The 
only evidence regarding the lack of the necessity of an estate administration 
was Sabrina’s testimony that it was her understanding that all Zapata’s 
heirs had signed an agreement regarding the division of his estate and that his 
debts had been paid.  However, Mrs. Zapata’s application for grant of 
letters of administration averred otherwise:
 
A necessity exists for the administration of this estate . . . for the reason 
that the Applicant has pursued a survival cause of action for the Decedent’s 
medical costs, burial costs, and conscious pain and suffering prior to death in 
[this lawsuit].  That survival claim comprises funds or property due to the 
estate; it is necessary that the court issue letters of administration to 
recover those funds or property, and property [sic] distribute them to the 
estate.
 
Therefore, 
at the same time Mrs. Zapata was asserting in the trial court that an estate 
administration was not necessary, she was claiming in the probate court 
that an estate administration was necessary.  See Tex. Prob. Code Ann. § 82(h) (providing 
that an application for letters of administration shall state that a necessity 
exists for administration of the estate); id. § 178(b) (stating that a 
necessity for an estate exists “if or when it is desired to have the county 
court partition the estate among the distributees”).
        Nevertheless, 
the evidence showed that at the time of trial, there was no need for an 
estate administration.  Sabrina’s testimony, uncontroverted by Dr. Pratho, 
established that Zapata’s debts had been settled and his heirs had agreed to a 
distribution of his estate.  See Shepherd, 962 S.W.2d at 33-34.  
The necessity urged in Mrs. Zapata’s application in the probate court—to 
obtain and distribute the recovery to Zapata’s heirs—would not arise unless 
and until any recovery for the survival action was actually awarded.  
Accordingly, we hold that at trial, Mrs. Zapata sufficiently pleaded and proved 
that no estate administration was pending and none was necessary.
        Contrary 
to Dr. Pratho’s assertions, Mrs. Zapata never abandoned or changed her 
position on her standing as an heir at the time of trial; at the JNOV hearing, 
her counsel reiterated that she satisfied the Shepherd v. Ledford 
exception at the time of trial and that the trial court had jurisdiction over 
the survival claim.[4]  Therefore, the JNOV was 
improper because the evidence before the trial court was sufficient to establish 
that Mrs. Zapata had standing to sue as an heir on behalf of Zapata’s estate.  
See Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 394 (Tex. 
1991) (stating that a court may render a JNOV if a directed verdict would have 
been proper); see also Prudential Ins. Co. v. Fin. Review Servs., Inc., 
29 S.W.3d 74, 77 (Tex. 2000) (explaining that a directed verdict is proper only 
when the evidence conclusively establishes the right of the movant to judgment 
or negates the right of the opponent).
        C.     Amended 
Pleading and Relation-Back Doctrine
        After 
trial but before the trial court rendered judgment on Zapata’s claims, the 
probate court opened an administration of Zapata’s estate, naming Sabrina as 
its personal administrator. With this estate administration pending, Sabrina 
then became the only party able to maintain a suit on behalf of Zapata’s 
estate.  See Chandler, 294 S.W.2d at 806.  Mrs. Zapata argues 
that the trial court should have allowed her post-trial motion for leave to file 
her amended petition naming Sabrina as plaintiff for the survival claim of 
Zapata’s estate, even though the two-year statute of limitations had run on 
the survival claim, because the amended petition related back to the original 
petition filed within the limitations timeframe.
        A 
trial court has no discretion to refuse a post-trial amendment of pleadings 
unless the opposing party presents evidence of surprise or prejudice or the 
amendment asserts a new cause of action or defense and the opposing party 
objects to the amendment.  State Bar of Tex. v. Kilpatrick, 874 
S.W.2d 656, 658 (Tex.), cert. denied, 512 U.S. 1236 (1994).  Dr. 
Pratho’s response to Mrs. Zapata’s motion for leave to file complained that 
Mrs. Zapata sought to plead factual allegations that were wholly opposite to the 
evidence presented at trial, creating “a wholly new, distinct and different 
proceeding with regards to the Estate of Reynaldo Zapata.”  But Dr. 
Pratho’s response did not include evidence that the amendment would cause 
surprise or prejudice his defense, and this amendment did not seek to add a new 
claim to the lawsuit.  Therefore, the trial court had no discretion to 
refuse Mrs. Zapata’s request to file her amended petition.  See id.
        Even 
though the amended petition was filed outside the statute of limitations for the 
estate’s survival claim, it would have related back to the earlier petition 
because Mrs. Zapata pleaded and proved standing as an heir at the time of trial. 
See Tex. Civ. Prac. & Rem. 
Code Ann. § 16.068 (Vernon 1997);[5] cf. 
Lovato v. Austin Nursing Ctr., Inc., 113 S.W.3d 45, 55 (Tex. App.—Austin 
2003, pet. granted) (holding that post-limitations pleading amendment naming 
plaintiff as estate representative related back to original pleading because 
plaintiff had authority to sue as an heir at the time suit was filed); Lorentz, 
112 S.W.3d at 179 (holding that amended pleading did not relate back because 
plaintiff did not show that she possessed standing when she filed the original 
pleading).[6]  With the operation of the 
relation-back doctrine, therefore, the post-verdict petition substituting the 
estate’s personal representative named the proper party for Zapata’s 
survival action and was timely filed.  Accordingly, we hold that the trial 
court erred in granting the JNOV and sustain Mrs. Zapata’s issue on appeal.
        Having 
overruled Dr. Pratho’s issue, we affirm the portion of the trial court’s 
judgment attributing responsibility to Dr. Pratho for Zapata’s death.  
Furthermore, having sustained Mrs. Zapata’s issue, we reverse the portion of 
the judgment that disregarded the jury’s findings on the estate’s survival 
cause of action and render judgment that past damages sustained by Zapata’s 
estate for pain and mental anguish suffered by Reynaldo Zapata before death 
amount to $406,000, the amount found by the jury.  We remand the cause to 
the trial court for computation of interest.
 
  
                                                          BOB 
MCCOY
                                                          JUSTICE
 
 
PANEL 
A:   CAYCE, C.J.; WALKER and MCCOY, JJ.
 
WALKER, 
J. filed a concurring opinion.
 
DELIVERED: 
February 3, 2005


COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-051-CV
 
 
SCOTT 
MASON PRATHO, M.D.                                                      
APPELLANT AND
APPELLEE
 
V.
 
LUPE 
ZAPATA, INDIVIDUALLY                                       
                   
APPELLEE AND
AND 
AS NEXT FRIEND FOR SABRINA                                                   
  APPELLANT
ZAPATA 
AND GREGORY ZAPATA, AND
AS 
HEIR OR REPRESENTATIVE OF THE
ESTATE 
OF REYNALDO ZAPATA, DECEASED
 
 
------------
 
FROM 
THE 153RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
CONCURRING OPINION
 
------------
I. Introduction
        I 
concur with the majority’s disposition of Mrs. Lupe Zapata’s cross-point, 
but I write separately because I do not agree with the majority’s reasoning 
that whether or not Mrs. Zapata possessed standing pivots on the definition of 
“pending,” that is, whether the application for administration of Mr. 
Zapata’s estate achieved “pending” status during the present trial.
        I 
would hold that the antiquated requirement that heirs suing for recovery of 
estate property plead and prove that no administration is pending and none is 
necessary should not apply to a statutory survival action. I would further hold 
that Mrs. Zapata possessed standing to bring the survival action on behalf of 
Mr. Zapata’s estate when she initially filed suit under the probate code as an 
unqualified community survivor prosecuting a suit to recover debts due the 
community estate—Mr. Zapata’s medical expenses and funeral 
expenses—regardless of whether she pleaded or proved that no administration 
was pending and none was necessary. I would hold that even if the requirement 
that heirs suing for recovery of estate property plead and prove that no 
administration is pending and none is necessary applies to statutory survival 
actions Mrs. Zapata satisfied that requirement. And finally, I would also hold 
that as a matter of law the subsequent filing of an application for letters of 
administration more than four years after the decedent’s death solely for the 
purpose of recovering and distributing any funds awarded to the decedent’s 
estate cannot retroactively defeat an heir’s standing to bring a survival 
action. For these reasons, I would sustain Mrs. Zapata’s cross-point and 
render judgment on the jury’s verdict concerning the estate’s survival 
damages.
II. Relevant 
Factual and Procedural Background
        Mr. 
Zapata died intestate on May 27, 1997. Mrs. Zapata filed an original petition on 
August 20, 1998 alleging that
 
Lupe Zapata brings this action in her individual capacity and on behalf of her 
children, Sabrina Zapata and Gregory Zapata, in their individual capacities as 
their Next Friend pursuant to Tex. Civ. Prac. & Rem. Code and § 71.004, and 
as Heir or Representative of the Estate of Reynaldo Zapata, Deceased, and on 
behalf of her children, Sabrina Zapata and Gregory Zapata, as heirs of the 
Estate of Reynaldo Zapata, Deceased, pursuant to Tex. Civ. Prac. & Rem. Code 
and § 72.021. No estate has been opened and no probate is necessary as the 
plaintiffs are the sole heirs and all family members agree upon the division of 
the estate. Further, all debts of the estate are provided for.
 
Mrs. 
Zapata subsequently added the allegation that Mr. Zapata had no will. Mrs. 
Zapata’s live pleading when the trial commenced on June 11, 2002 contained 
these same allegations.
        During 
their case-in-chief, however, Mrs. Zapata offered no evidence of these pleaded 
facts. Consequently, Dr. Pratho moved for a directed verdict on the survival 
action based on lack of standing. The trial court allowed Mrs. Zapata to reopen 
and to put on evidence outside the presence of the jury concerning standing.
        Sabrina 
Zapata Nava testified that, during the four years following her father’s 1997 
death, her mother and her family settled any debts her father owed at the time 
of his death. She identified a “Family Agreement” and said that it was her 
understanding that she and all of the Zapata children, including adult children 
in Belton from her father’s first marriage, had signed the document agreeing 
to a division of her father’s estate. Sabrina testified that her father did 
not own any real estate and that the only personal property he owned was his 
“personal effects” and whatever money was in his bank account at his death.
        At 
the conclusion of this testimony, Mrs. Zapata’s counsel argued that this 
evidence established standing. In response to questioning by the court, however, 
Mrs. Zapata’s counsel conceded that, “out of an abundance of caution,” he 
had filed an application for letters of administration before he successfully 
obtained the signatures of all of the family members on the family agreement. 
The trial court denied Dr. Pratho’s motion for a directed verdict, indicating 
that he would submit the estate’s damages to the jury and re-address the 
standing issue if necessary on motion for judgment notwithstanding the verdict.
        The 
jury awarded $406,000 damages to the estate for pain and mental anguish suffered 
by Mr. Zapata before his death as a result of the occurrence in question and for 
funeral and burial expenses. Dr. Pratho filed a motion for judgment 
notwithstanding the verdict as to the estate damages. Dr. Pratho’s motion 
asserted three grounds for judgment notwithstanding the verdict: (1) Mrs. Zapata 
did not conclusively establish there were no debts owing to the estate; (2) 
although Sabrina Zapata testified the heirs of Reynaldo Zapata had agreed to the 
disposition of the estate, she also testified that she had no direct knowledge 
of the agreement and had not spoken with her stepbrothers or sisters; and (3) 
because Mrs. Zapata had, in fact, filed an application for letters of 
administration with the probate court, Mrs. Zapata did not have standing to 
bring the estate’s survival action as an heir.
        Mrs. 
Zapata then filed a motion for leave to file their seventh amended original 
petition. That petition pleaded that Sabrina Zapata brought suit as the personal 
representative and administrator of the estate of Reynaldo Zapata. Mrs. Zapata 
attached a copy of the “Application to Appoint Independent Administrator and 
for Issuance of Letters of Administration” to her motion. The application 
bears a file stamp of June 26, 2002 and alleges that Mr. Zapata died intestate 
on May 27, 1997, owned no real property, and possessed personal property in the 
form of a checking account and a savings account containing a combined balance 
of less than $20,000 at the time of his death. The application lists the present 
survival action as personal property owned by Mr. Zapata and states that no 
other significant personal property exists. The application pleads that
 
a necessity exists for the administration of this estate, more than four years 
after death for the reason that Applicant has pursued a survival cause of action 
for the Decedent’s medical costs, burial costs, and conscious pain and 
suffering prior to death in [this lawsuit]. That survival claim comprises funds 
or property due to the estate; it is necessary that the court issue letters of 
administration to recover those funds or property, and property [sic] distribute 
them to the estate.
 
Letters 
of administration were issued to Sabrina Zapata Nava on September 12, 2002. The 
trial court denied Mrs. Zapata’s motion for leave to file her seventh amended 
original petition, granted Dr. Pratho’s motion for judgment notwithstanding 
the verdict as to the survival damages, and signed a final judgment on November 
26, 2002. This appeal and cross-appeal followed.
III. Standing 
to Bring Statutory Survival Action
        The 
issue of standing is a legal question that we review de novo. City of 
Arlington v. Scalf, 117 S.W.3d 345, 347 (Tex. App.—Fort Worth 2003, pet. 
denied) (recognizing that because standing is a component of subject-matter 
jurisdiction, we review a trial court's determination of standing de novo) 
(citing Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998), cert. 
denied, 526 U.S. 1144 (1999)); El Paso Cmty. Partners v. B&G/Sunrise 
Joint Venture, 24 S.W.3d 620, 624 (Tex. App.—Austin 2000, no pet.). It is 
well-settled that a plaintiff must establish standing to bring a lawsuit. See 
Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-47 (Tex. 
1993). The test for standing requires that there be a real controversy between 
the parties that will actually be determined by the judicial declaration sought. 
See Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 
662 (Tex. 1996). To establish standing, one must show a justiciable interest by 
alleging actual or imminent threat of injury peculiar to one's circumstances and 
not suffered by the public generally. See Tex. Ass’n of Bus., 852 
S.W.2d at 444; Lorentz v. Dunn, 112 S.W.3d 176, 178 (Tex. App.—Fort 
Worth 2003, pet. granted); see also, e.g., Singleton v. Donalson, 117 
S.W.3d 516, 519 (Tex. App.—Beaumont 2003, pet. denied) (holding that where 
life tenant has unqualified power to dispose of property during his lifetime, 
remainder beneficiaries have no justiciable interest in any property except that 
which has not been disposed of at life tenant's death). A plaintiff has standing 
when it is personally aggrieved, regardless of whether she is acting with legal 
authority. Nootsie, 925 S.W.2d at 661; see Pledger v. Schoellkopf, 
762 S.W.2d 145, 146 (Tex. 1988). Standing is jurisdictional and cannot be 
waived. Tex. Ass'n of Bus., 852 S.W.2d at 445-46.
        The 
Texas Survival Statute provides that a personal injury action survives to heirs, 
legal representatives, and the estate of the injured person. See Tex. Civ. Prac. & Rem. Code Ann. § 
71.021(b) (Vernon 1997). Thus, the plain language of the statute appears to 
confer standing to assert this statutory survival cause of action—the 
decedent’s personal injury action—upon “heirs, legal representatives, and 
the estate” of the decedent. Lorentz, 112 S.W.3d at 179 (recognizing 
that “This statute [the survival statute] provides a party who would not 
otherwise have a justiciable claim with standing to sue.”); see also Garcia 
v. Caremark, Inc., 921 S.W.2d 417, 421 (Tex. App.—Corpus Christi 1996, no 
writ). Likewise, the Texas Probate Code provides that when a person dies 
intestate all of his estate shall vest immediately in his heirs. See 
Tex. Prob. Code Ann. § 37 (Vernon 
2003). When a person dies intestate leaving a surviving spouse, the spouse is an 
heir. Id. § 38. Thus, again, the plain language of these statutory 
provisions would, upon the death of the intestate decedent, seem to immediately 
vest in his heirs at law, including a surviving spouse, with ownership of, and 
accordingly standing to assert, the deceased’s personal injury action via a 
survival action. Accord Nootsie, 925 S.W.2d at 661 (holding that 
“[a] plaintiff has standing when it is personally aggrieved, regardless of 
whether it is acting with legal authority”). And finally, the probate code 
makes a specific exception to the four-year time period for obtaining letters of 
administration when administration is subsequently necessary in order to receive 
funds owed to the estate. Tex. Prob. Code 
Ann. § 74. The probate code thus expressly recognizes that an 
administration may become necessary not to pay debts, but simply to receive and 
distribute monies owed to the estate, such as monies paid pursuant to a judgment 
on a jury verdict for an estate based on a survival action brought by heirs at 
law.  Id.
        Juxtaposing 
general principles of standing with the statutory scheme concerning survival 
actions, it would appear that, to bring a statutory survival action on behalf of 
an estate, a person must prove only that he or she possesses some justiciable 
interest in the survival action, that is, that some portion of the action 
belongs to them via a will or by the laws of descent and distribution.  See 
Tex. Civ. Prac. & Rem. Code Ann. § 
71.021(b); Nootsie, 925 S.W.2d at 661; accord Lorentz, 112 
S.W.3d at 178-79 (holding person who was not an heir and had not been appointed 
personal representative of the estate when she filed survival action had no 
standing under statute to bring survival suit); Ford Motor Co. v. Cammack, 999 
S.W.2d 1, 4-5 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (holding that 
parents of adult daughter did not establish standing when they failed to prove 
any justiciable interest in her estate’s survival suit; they failed to prove 
whether she had died intestate or testate, they failed to obtain declaration of 
heirship from probate court, and no administration had occurred); Pluet v. 
Frasier, 355 F.3d 381, 384-86 (5th Cir. 2004) (holding mother of 
decedent’s alleged child did not establish standing to sue when she failed to 
prove any justiciable interest in estate’s survival claim; paternity tests 
revealed child was not decedent’s and mother did not prove she was an heir or 
was appointed any type of representative of estate when suit was filed). A 
plaintiff lacks standing to bring a survival action if he or she fails to prove 
anything more than that he or she is a relative or friend of the deceased; 
instead, the plaintiff must prove that he or she possessed some justiciable 
interest in the survival action, that is, that he or she is personally 
aggrieved. Cammack, 999 S.W.2d at 4-5; Pluet, 355 F.3d at 384-86. 
A random third party, who is not an heir of the deceased or the personal 
representative of the estate of the deceased, possesses no standing to bring a 
survival action on behalf of the deceased’s estate. See Lorentz, 
112 S.W.3d at 179; Pluet, 355 F.3d at 384-86.

IV. Requirement that Heirs Suing For Recovery of Estate Property
Plead and Prove 
that No Administration is Pending and None is Necessary
        Early 
in Texas’s history, the rule of law was established that “the necessity for 
administration must be presumed in every case, unless facts be shown that make 
it an exception.” Webster v. Willis, 56 Tex. 468, 474 (1882); see 
also Davis v. Cayton, 214 S.W.2d 801, 804 (Tex. Civ. App.—Amarillo 1948, 
no writ). Because of this presumption, the general rule is that only an 
administrator or executor may sue to recover estate property or be sued on 
estate debts. See, e.g., Richardson v. Vaughan, 23 S.W. 640, 
640-41 (Tex. 1893) (recognizing general rule that only administrator may sue); Lacy 
v. Williams, 8 Tex. 182, 187 (1852) (same). Heirs are entitled to bring suit 
in their own names to recover estate property only if they defeat the 
presumption that a necessity exists for administration, usually by alleging and 
proving that no administration is pending and none is necessary. Davis, 
214 S.W.2d at 804 (recognizing that because of presumption appellant was charged 
with burden of proving no necessity for administration); see also Laas v. 
Seidel, 67 S.W. 1015, 1015 (Tex. 1902) (recognizing heir or legatee cannot 
sue in his own name to recover estate property unless he pleads and proves no 
administration is pending and none is necessary); Richardson, 23 S.W. at 
640-41 (same); Youngs v. Youngs, 26 S.W.2d 191, 194 (Tex. Comm’n App. 
1930, judgm’t adopted) (same); accord McCampbell v. Henderson, 
50 Tex. 601, 611 (1879) (permitting creditor’s suit directly against heirs 
where no administration was pending, none was necessary, and heirs were in 
possession of ancestor’s property).
        The 
rationale underlying the requirement that heirs bringing suit in their own name 
to recover estate property allege and prove that there is no administration upon 
the estate and none is necessary was explained in Giddings v. Steele, 28 
Tex. 732, 749 (1866). There, the supreme court explained that requiring the 
administrator to bring suit (1) prevented simultaneous suits by the heirs and 
the administrator both claiming the right to the same property and (2) prevented 
the heirs from essentially effecting a partition of the estate by recovering 
monies in their own name and refusing to turn them over to the administrator or 
to creditors for satisfaction of the debts of the estate. Giddings, 28 
Tex. at 749; see also Lacy, 8 Tex. at 187. Heirs could not sue in their 
own name in district court to recover estate property and thereby effectuate a 
partition of an estate because a district court errs by assuming jurisdiction to 
decree a partition of an estate among heirs before any necessary administration 
in the probate court is concluded. See Elliott v. Elliott, 208 S.W.2d 
709, 712-13 (Tex. Civ. App.—Fort Worth 1948, writ ref’d n.r.e.).
        From 
an early date, however, courts recognized that the surviving spouse, as an 
unqualified community survivor, may prosecute a suit to recover a debt due the 
community estate without the necessity of pleading or proving that no 
administration was pending and none was necessary. See San Antonio & A. 
P. Ry. Co. v. Evans, 198 S.W. 674, 675 (Tex. Civ. App.—Texarkana 1917, no 
writ); Mo., K. & T. Ry. Co. of Tex. v. Groseclose, 134 S.W. 736, 739 
(Tex. Civ. App. 1911, writ ref’d); W. Union Tel. Co. v. Kerr, 4 Tex. 
Civ. App. 280, 283, 283 S.W. 564, 565 (Tex. Civ. App. 1893, no writ). The 
surviving spouse, even in the absence of having qualified under the statute, is 
given broad powers to possess, control, and dispose of the community property in 
settlement of community affairs. See Tex. Prob. Code Ann. § 160(a); S. 
Underwriters v. Lewis, 150 S.W.2d 162, 167 (Tex. Civ. App.—Texarkana 1941, 
no writ); see also Coleman v. Winn-Coleman, Inc., 110 S.W.3d 104, 
110 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding surviving spouse 
has power to sue to collect claims due the community estate without qualifying 
as community administrator). In cases where the question of necessity for 
administration has been raised by a debtor being pressed for payment of a debt 
due the community estate, it is uniformly held that the unqualified community 
survivor may prosecute the suit, and in doing so that she exercises powers 
similar to that of a surviving partner. S. Underwriters, 150 S.W.2d at 
167.
        Other 
exceptions also exist to the general rule that only an administrator or executor 
may bring suit to recover estate property. See Walker v. Abercrombie, 61 
Tex. 69, 71 (1884). While it is ordinarily true that the legal representative of 
a deceased person’s estate is the proper person to maintain a suit to recover 
property of or a debt due to an estate, there are well-settled exceptions to 
this rule even in cases where heirs or persons claiming rights derived from and 
through the deceased are the persons suing.  Id. Heirs are permitted 
to sue in their own names to recover estate property under certain exceptions to 
the general rule. Accord Shepherd v. Ledford, 962 S.W.2d 28, 31-32 (Tex. 
1998) (recognizing general rule applies only when heirs bring suit within 
four-year period for administration); Frazier v Wynn, 472 S.W.2d 750, 752 
(Tex. 1971) (recognizing general rule applies only when heirs attempt to sue in 
their own name “during the four-year period allowed by law for instituting 
administration proceedings”); Walker, 61 Tex. at 73 (recognizing 
exception to general rule when suit was required to prevent running of 
limitations); Rogers v. Kennard, 54 Tex. 30, 37 (1880) (recognizing 
exception to general rule when administrator was directly antagonistic to 
heir-plaintiffs so that he could not have instituted suit in their behalf); Giddings, 
28 Tex. at 748-49 (recognizing exception to general rule when administration had 
been closed); Youngs, 26 S.W.2d at 194-95 (recognizing general rule 
applies only when heirs attempt to sue in their own names “within the 
four-year period allowed by law for an administration”); Rackley v. May, 
478 S.W.2d 219, 225 (Tex. Civ. App.—Houston [1st Dist.] 1972, writ ref’d 
n.r.e.) (recognizing exception to general rule when administration period had 
passed); Izard v. Townsend, 208 S.W.2d 666, 667-68 (Tex. Civ. 
App.—Galveston 1948, no writ) (recognizing exception to general rule when the 
interest of estate required immediate action and there was no representative 
qualified to act); Tunnell v. Moore, 53 S.W.2d 324, 326 (Tex. Civ. 
App.—Dallas 1932), aff’d, 86 S.W.2d 207 (Tex. 1935) (recognizing 
exception to general rule when statutory time for administration had expired). 
The rule—that the legal representative of a deceased person’s estate is the 
proper person to maintain a suit to recover property of or a debt due to an 
estate—is not an unbending one and has its foundation in the necessity for 
giving protection to creditors of a deceased person, which in most cases makes 
it necessary to place the estate and its control in the hands of a legal 
representative, freed from interference by heirs, legatees, or devisees, while 
such representative is in the lawful discharge of the funds. Walker, 61 
Tex. at 71. “This rule does not exist for the benefit of debtors to the estate 
who are indisposed to pay what they justly owe to any one.” Id.
        In 
1893, in Richardson v. Vaughan, the Texas Supreme Court expressly 
recognized the questionable logic in the prohibition against heirs suing in 
their own names to recover estate assets but justified its continued application 
on the ground that it had been followed so long that “it is too late to depart 
from it.” 23 S.W. at 641.
 
Since our statute casts the legal title of property belonging to the estate of 
deceased persons directly upon the heirs . . . , we think it might properly have 
been held that, after the lapse of a reasonable time without administration upon 
the estate, they should have the right to sue for the recovery of any chose in 
action or other property which had descended to them. But from an early day a 
different doctrine has been announced in this court, and it is now too late to 
depart from it. As a general rule, the holding has been that the heirs cannot 
sue without alleging and proving that there is no administration upon the 
estate, and that there is no necessity for one.
 
Richardson, 
23 S.W. at 640-41. Despite the Richardson Court’s criticism in 1893, 
courts nonetheless continued to apply the general rule that only an 
administrator can sue to recover estate property and to impose the corollary 
requirement that an heir bringing suit in his own name to recover estate 
property must allege and prove that there is no administration upon the estate 
and that none is necessary. See, e.g., Youngs, 26 S.W.2d at 194-95 
(decided in 1930).
        In 
1998 in Shepherd v. Ledford, the Texas Supreme Court discussed the 
general rule and the corollary requirement—that an heir may not bring suit in 
his own name to recover estate property unless he pleads and proves no 
administration is pending and none is necessary—in the context of an heir’s 
standing to bring a survival action. 962 S.W.2d at 31.[7]  
Other than Shepherd, the supreme court has not applied the rule that 
heirs cannot sue without alleging and proving that there is no administration 
upon the estate and that none is necessary to an heir’s standing to bring a 
statutory survival action. And even in Shepherd, the supreme court 
ultimately held that Mrs. Ledford possessed standing to sue on behalf of Mr. 
Ledford’s estate. Id. at 34. Thus, the supreme court has never applied 
the general rule to defeat an heir’s standing to bring a survival action.
        Indeed, 
it is questionable whether the general rule that an heir may not bring suit in 
his own name to recover estate property without pleading and proving that no 
administration is pending and none is necessary is applicable to a statutory 
survival action. Accord Loper v. Meshaw Lumber Co., 104 S.W.2d 597, 603 
(Tex. Civ. App.—Eastland 1937, writ dism’d) (holding that, because heir’s 
suit was statutory trespass to try title suit, pleadings containing allegations 
in accordance with statute were sufficient and pleading that no administration 
was pending or necessary was not required). Additionally, the law no longer 
presumes the necessity for administration in every case. See Tex. Prob. Code Ann. § 178(b) (“No 
administration of any estate shall be granted unless there exits a necessity 
therefor[e].”); Pitner v. United States, 388 F.2d 651, 656 n.6 (5th 
Cir. 1967). If an administration is not necessary to satisfy the purposes of 
collecting the assets, paying debts and claims, and distributing the remaining 
property, certainly the law should not demand it merely as an empty form. Pitner, 
388 F.2d at 656 n.6. (quoting Basye, Streamlining Administration Under the 
New Texas Probate Code, 35 Texas L. 
Rev. 165-66 (1956)). The policy concerns underlying the general rule that 
only the administrator or executor of a decedent’s estate may bring suit to 
recover the decedent’s property likewise do not seem applicable to a statutory 
survival action. See, e.g., Walker, 61 Tex. at 71-72 (recognizing general 
rule is for benefit of creditors, not debtors).
        Despite 
the questionable logic of applying the general rule that heirs cannot sue in 
their own names to recover estate property, based on the supreme court’s 
discussion in Shepherd, Texas courts began applying the general rule that 
heirs must plead and prove no administration is pending and none is necessary to 
establish standing to bring a statutory survival suit in their own name on 
behalf of the estate. See Lovato v. Austin Nursing Ctr., Inc., 113 S.W.3d 
45, 52-55 (Tex. App.—Austin 2003, pet. granted); Stewart v. Hardie, 978 
S.W.2d 203, 207 (Tex. App.—Fort Worth 1998, pet. denied); see also Moore v. 
Johnson, 143 S.W.3d 339, 343-44 (Tex. App.—Dallas 2004, no pet.); Stempson 
v. City of Houston, No. 01-02-000280-CV, 2003 WL 139603, at *2-3 (Tex. 
App.—Houston [1st Dist.] 2003, no pet.) (mem. op.).  The problem with 
requiring an heir to prove standing by pleading when the suit is filed and proving 
at the time of trial that no administration is pending and none is necessary 
is that whether an administration is necessary is not a static fact that may be 
proved once and for all.  A survival action must be brought within two 
years of the decedent’s death, but creditors of the decedent’s estate may 
initiate an administration at any time within four years of the intestate’s 
death—leaving a two-year gap when the administration facts pleaded by an heir 
instituting a survival action are subject to change. See Tex. Civ. Prac. & Rem. Code Ann. § 
16.003(b) (Vernon 2002) (setting forth two-year statute of limitations); Tex. Prob. Code Ann. § 74 (setting 
forth four-year period for creditor to initiate administration).  For 
example, no administration is necessary if the estate has fewer than two debts.  
But what happens if the heirs allege standing to sue based on the estate having 
fewer than two debts, limitations runs on the survival action, and a 
creditor—whom the heirs at law do not even know exists—files an application 
for administration?  Does this subsequent fact eliminate an heir’s 
initial standing to bring suit on behalf of the estate?[8]  
No administration is necessary when a family settlement agreement exists.  
But what happens if the heirs allege standing to sue based on a family 
settlement agreement, limitations runs on the survival action, and one heir 
subsequently decides not to accept the family settlement agreement?  Does 
this subsequent fact, which gives rise to the necessity for administration of 
the estate, defeat an heir’s initial standing to bring suit on behalf of the 
estate?  What happens if after a final judgment awarding survival damages 
to an estate an administration becomes necessary?  Is the judgment subject 
to collateral attack as void because the heir who brought the suit did not have 
standing?  Or, applying the majority’s logic, what happens if a probate 
court issues letters of administration during the trial of a survival action, 
causing an administration to become “pending”?  Does the pendency of 
such an administration during one day of trial retroactively defeat the heir’s 
heretofore achieved standing?
        The 
problems in this case developed as a result of just such evolving facts.
V. Application 
of Law to the Present Facts
        A. 
Standing to Assert Survival Action
        Mrs. 
Zapata pleaded and proved that she possessed a justiciable interest in the 
survival action that she brought on behalf of her husband’s estate. She 
pleaded that Mr. Zapata died intestate and that she was one of his heirs. See 
Tex. Prob. Code Ann. § 38 
(surviving spouse is an heir when husband dies intestate). Mr. Zapata’s 
property, including this medical negligence action, vested immediately in his 
heirs, including Mrs. Zapata. See id. As an heir, Mrs. Zapata was 
statutorily authorized to bring suit on behalf of Mr. Zapata’s estate. See 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 71.021. By alleging that she was an heir in whom ownership of a portion of 
Mr. Zapata’s medical negligence claim had vested and asserting Mr. Zapata’s 
negligence claims, Mrs. Zapata alleged an actual injury peculiar to her 
circumstances and not suffered by the public generally. See Tex. Ass’n of 
Bus., 852 S.W.2d at 443. Mrs. Zapata had standing to file Mr. Zapata’s 
statutory survival action because a portion of that action passed to her as an 
heir and, accordingly, she was personally aggrieved, regardless of whether she 
was acting with legal authority. Nootsie, 925 S.W.2d at 659 (“A 
plaintiff has standing when it is personally aggrieved, regardless of whether it 
is acting with legal authority.”).

B. General Rule Does Not Apply to Suit to Recover
a Debt Due the Community Estate—Funeral Expenses
        A 
surviving spouse, as an unqualified community survivor, may prosecute a suit to 
recover a debt due the community estate without the necessity of pleading or 
proving that no administration was pending and none was necessary. Tex. Prob. Code Ann. § 160(a); Coleman, 
110 S.W.3d at 110; S. Underwriters, 150 S.W.2d at 167; San Antonio 
& A. P. Ry. Co., 198 S.W. at 675; Mo., K. & T. Ry. Co. of Tex., 
134 S.W. at 739; W. Union Tel. Co., 23 S.W. at 565.  Funeral 
expenses of a deceased spouse in a reasonable amount are chargeable to the 
entire community estate.  Landers v. B. F. Goodrich Co., 369 S.W.2d 
33, 35 (Tex. 1963) (“reasonable cost of a suitable funeral constitutes a 
charge against the estate”); Goggans v. Simmons, 319 S.W.2d 442, 446 
(Tex. Civ. App.—Fort Worth 1958, writ ref’d n.r.e.) (same).  
Nonetheless, reasonable funeral expenses are recoverable damages in a survival 
suit because they must be incurred as a result of the injuries.  Landers, 
369 S.W.2d at 35; see also Russell v. Ingersoll-Rand Co., 841 S.W.2d 343, 
345 (Tex. 1992) (same).
        The 
Zapata’s live trial pleading sought recovery for Mr. Zapata’s physical pain 
and mental anguish and asserted that “[t]he estate has also incurred burial 
expenses and medical expenses for which the estate makes claim.”  The 
estate’s damages were submitted in broad form, asking the jury what sum of 
money would fairly and reasonably compensate Mr. Zapata’s estate for (a) pain 
and mental anguish and (b) funeral and burial expenses.  The jury answered 
$406,000.
        The 
law is clear that Mrs. Zapata, as the surviving spouse and unqualified community 
survivor, possessed the power and authority to prosecute the survival suit to 
recover the funeral and burial expenses due the community estate without the 
necessity of pleading or proving that no administration was pending and none was 
necessary.  Tex. Prob. Code Ann. 
§ 160(a); Coleman, 110 S.W.3d at 110; S. Underwriters, 150 S.W.2d 
at 167; San Antonio & A. P. Ry. Co., 198 S.W. at 675; Mo., K. 
& T. Ry. Co., 134 S.W. at 739; W. Union Tel. Co., 23 S.W. at 565.  
Thus, at least as to the funeral and burial element of damages, she possessed 
standing to bring the instant survival suit.[9]
C. Pleading that No Administration was Necessary
        As 
discussed above, it would appear that the requirement that an heir may not sue 
to recover estate property unless the heir pleads that no administration is 
pending and none is necessary is not applicable to a determination of whether an 
heir possesses standing to bring a statutory survival action.  Accord 
Loper, 104 S.W.2d at 603.  But, nonetheless, if this pleading 
requirement applies to determine standing in survival actions, the record 
demonstrates that Mrs. Zapata satisfied the requirement.  She pleaded that 
she brought the suit as heir or representative of the estate of Mr. Zapata and 
on behalf of their children as heirs of Mr. Zapata’s estate.  She pleaded 
that Mr. Zapata died intestate and that no administration was pending or 
necessary.  These facts were true at the time each of her first six amended 
petitions were filed.  Thus, even assuming the requirement that to bring 
suit an heir must plead that no administration was pending and none was 
necessary, Mrs. Zapata sufficiently pleaded standing to assert the 
survival action.

D. Proof Regarding Necessity for Administration:
Time for Administration By Creditors Had Expired;
Family Settlement Agreement
        During 
trial, on July 3, 2002, the trial court allowed Mrs. Zapata to reopen her case 
in chief and to offer evidence (1) that Mr. Zapata’s heirs had entered into a 
family settlement agreement, (2) that during the four years after Mr. Zapata’s 
intestate death on May 27, 1997, any debts owed by him at the time of his death 
had been settled, (3) that Mr. Zapata did not own any real estate, and (4) that 
the only personal property Mr. Zapata owned was his “personal effects” and 
less than $20,000 in his bank accounts at his death.[10]  
This proof establishes that no administration was necessary.
        The 
proof establishes that no administration was necessary because over five years 
had elapsed since the death of Mr. Zapata and the time within which a creditor 
could file an application for administration had expired.  See Tex. Prob. Code Ann. § 74 (providing 
that all applications for letters of administration must be filed within four 
years after the death of the intestate).  No creditor of Mr. Zapata’s had 
felt sufficient interest in his estate to cause an administration to be opened.  
Accord Walker, 61 Tex. at 73.  The primary purpose of an 
administration is for the protection of creditors. See, e.g., S. Underwriters, 
150 S.W.2d at 168.  Because the time for creditors to seek an 
administration had expired, no administration was necessary, and Mrs. Zapata was 
authorized to continue to prosecute the survival action.  Accord 
Shepherd, 962 S.W.2d at 31-32 (phrasing general rule as prohibiting heirs 
from suing “during the four-year period” for an administration without 
alleging no administration is pending and none is necessary); Frazier, 
472 S.W.2d at 752 (same); Rackley, 478 S.W.2d at 225 (same).
        The 
proof also establishes that no administration was necessary because Mr. 
Zapata’s heirs had entered into a family settlement agreement.  Proof of 
such an agreement establishes that no administration is necessary.  See 
Tex. Prob. Code Ann. § 37; Shepherd, 
962 S.W.2d at 34 (citing In re Estate of Hodges, 725 S.W.2d 265, 267 
(Tex. App.—Amarillo 1986, writ ref’d n.r.e.)).  The record reflects 
that Mrs. Zapata proved no administration was necessary for three alternative 
reasons:  (1) the debts of the estate had been settled; (2) a family 
agreement existed; and (3) the time for administration for the benefit of 
creditors had expired.
        E. 
An Administration Was Attained
        On 
June 26, 2002, more than four years after Mr. Zapata died intestate on May 27, 
1997, Mrs. Zapata filed an application for letters of administration alleging 
that the possibility of a recovery in the survival action necessitated an 
administration.  On September 12, 2002, after the jury returned its verdict 
for Mrs. Zapata and during the trial court’s plenary power, the probate court 
issued letters of administration to Sabrina Zapata Nava.  Mrs. Zapata filed 
a motion requesting leave to file a seventh amended original petition pleading 
that Sabrina Zapata Nava brought the survival suit as administrator of the 
estate of Mr. Zapata.  The trial court denied Mrs. Zapata’s motion for 
leave.  For the reasons discussed in the majority opinion, the trial court 
erred by denying Mrs. Zapata leave to file her seventh amended original 
petition.  See also Tex. R. 
Civ. P. 63, 66; Greenhalgh v. Serv. Lloyds Ins. Co., 787 S.W.2d 
938, 939-40 (Tex. 1990) (holding trial court possesses no discretion to deny 
post-verdict amendment unless party opposing amendment presents evidence of 
surprise or prejudice or amendment asserts new cause of action or defense).
        Once 
Sabrina obtained letters of administration, she possessed standing as 
administrator to pursue the survival action on behalf of her father’s estate. See, 
e.g., Shepherd, 962 S.W.2d at 31 (recognizing personal representatives of 
estate have standing to prosecute survival suit).  As discussed in 
subsections A, B, C, and D above, Mrs. Zapata possessed standing to initially 
file the survival action and when Sabrina obtained letters of administration, 
she also possessed standing to step in, via an amended pleading, and conclude 
the survival action.  Accord Tex. 
R. Civ. P. 65.  Thus, the survival action was at all times asserted 
on behalf of Mr. Zapata’s estate by a person with standing.
F. Dr. Pratho’s Evidentiary Challenges
        Dr. 
Pratho claims that Mrs. Zapata failed to “conclusively establish that there 
were no debts owing to the estate,” that is, that an administration was not 
necessary.  Dr. Pratho points to two alleged debts—Mr. Zapata’s medical 
expenses and funeral expenses—which Sabrina could not conclusively testify had 
been paid.[11]  The Texarkana court of appeals 
in Southern Underwriters rejected the exact claims made by Dr. Pratho 
here. 150 S.W.2d at 167-68.
        Mr. 
Lewis sued Southern Underwriters and others for worker’s compensation 
benefits.  Id.  Mr. Lewis died before trial.  Id. 
at 164.  During trial the defendants moved for a directed verdict and, 
after trial, for judgment notwithstanding the verdict on the ground that the 
plaintiffs, the surviving spouse and child of Mr. Lewis, failed to show that 
there was no necessity for administration of Mr. Lewis’s estate.  Id. at 
167.  The defendants argued that without showing such facts the plaintiffs 
had no right to prosecute the suit.  Id.  The testimony showed 
that the property owned by Mr. Lewis at the time of his death consisted of 
$723.69 due him by defendants on his compensation claim and a small 
"shack" worth approximately $5; he owed $75 borrowed money, some 
doctor bills, and the expenses of his last illness and burial, which were not 
shown to have been paid.  Id.  These facts showed necessity for 
administration in the sense that they would authorize the granting of letters of 
administration.  Id.  But nonetheless, the court held that Mrs. 
Lewis was not required to obtain letters of administration or to plead or prove 
that no administration of Mr. Lewis’s estate was pending or necessary. S. 
Underwriters, 150 S.W.2d at 167.
        The 
court of appeals recognized that when Mr. Lewis died Mrs. Lewis became entitled 
to one-half the community property and the minor child to the other one-half, 
subject to the debts against the estate.  Id.  Mrs. Lewis, 
having an interest in Mr. Lewis’s cause of action, was entitled to maintain 
the suit, and it was not necessary to allege there was no administration on the 
estate.  The court of appeals reiterated that a primary purpose of 
administration is the protection of creditors of the estate.  Id.  
In cases where the question of necessity for administration is raised by a 
debtor being pressed for payment of a debt due the community estate, it is 
uniformly held that the unqualified community survivor may prosecute the suit, 
and that in doing so she exercises powers similar to that of a surviving 
partner.  Id.
        Here, 
Mr. Zapata’s funeral expenses constitute a debt of the community estate.  
See Landers, 369 S.W.2d at 35. Likewise, Mr. Zapata’s medical 
expenses constitute a debt of the community estate. See, e.g., Moreno v. 
Alejandro, 777 S.W.2d 735, 737 (Tex. App.—San Antonio 1989, writ denied) (citing 
Graham v. Franco, 488 S.W.2d 390, 396 (Tex. 1972) (holding “recovery for 
medical expenses incurred during marriage is community property”).  While 
the possible existence of these two debts may authorize an administration, they 
do not compel Mrs. Zapata to obtain one before suing to recover these debts 
allegedly due the community estate.  Mrs. Zapata, Mr. Zapata’s surviving 
spouse, as an unqualified community survivor, possessed authority to prosecute a 
suit to recover these debts due the community estate without the necessity of 
pleading or proving that no administration was pending and none was necessary. Tex. Prob. Code Ann. § 160(a); Coleman, 
110 S.W.3d at 110; S. Underwriters, 150 S.W.2d at 167; San Antonio 
& A. P. Ry. Co., 198 S.W. at 675; Mo., K. & T. Ry. Co., 134 
S.W. at 739; W. Union Tel. Co., 23 S.W. at 565.
        Next, 
Dr. Pratho claims that although Sabrina Zapata Nava testified that the heirs of 
Reynaldo Zapata had agreed to the disposition of the estate, she also testified 
that she had no direct knowledge of the agreement and had not spoken with her 
stepbrothers or sisters.[12]  Sabrina’s 
testimony reflects that her lawyers spoke with Mr. Zapata’s heirs.  No 
evidence exists in the record that any heir did not sign the agreement or that 
any heir repudiated the agreement.  I cannot agree that Sabrina’s 
testimony that she personally did not speak with her stepbrothers or sisters has 
any consequence to the validity of the family settlement agreement.  That 
agreement established that no administration was necessary. See Shepherd, 
962 S.W.2d at 33-34 (holding “because of the family agreement, no formal 
administration was necessary”).
        Finally, 
Dr. Pratho claimed that Mrs. Zapata did not have standing to initially bring the 
estate’s survival action because Mrs. Zapata subsequently filed an application 
for letters of administration.  I cannot agree.  Mrs. Zapata pleaded 
standing to bring a survival suit on behalf of Mr. Zapata’s estate on the 
grounds that no administration was necessary.  Four years passed.  No 
administration was necessary.  Nonetheless, “out of an abundance of 
caution,” the Zapatas instituted an administration solely for the purpose of 
receiving and distributing any funds recovered in this survival action. 
Administration for the purpose of receiving and distributing any funds awarded 
to Mr. Zapata’s estate in the survival action cannot defeat Mrs. Zapata’s 
standing to bring that same survival action.  The argument is circular.  
Dr. Pratho argues that Mrs. Zapata lacked standing because an administration was 
required.  Then, when Mrs. Zapata obtained letters of administration, he 
argues that the obtaining of letters of administration retroactively defeated 
Mrs. Zapata’s standing.  For these reasons, I concur with the 
majority’s holding that Dr. Pratho was not entitled to judgment 
notwithstanding the jury’s verdict on the estate damages.
VI. Conclusion
        The 
requirement that heirs must plead and prove no administration is pending and 
none is necessary should not be applied to statutory survival actions.  
Assuming the satisfaction of this requirement is necessary to attain standing to 
bring a statutory survival action, Mrs. Zapata pleaded and proved that no 
administration was pending and none was necessary.  The Zapatas also proved 
up a family settlement agreement, further establishing that no administration 
was necessary.  They were, in any event, excused from proving at trial that 
no administration was necessary because the trial occurred more than four years 
after Mr. Zapata’s death and the four-year time period for creditors to 
institute an administration had expired, bringing them within an exception to 
the requirement that heirs plead and prove that no administration is pending and 
none is necessary.  And finally, Mrs. Zapata possessed standing as a 
surviving spouse and unqualified community administrator to bring the survival 
suit to recover medical and funeral expenses due the community estate. 
Nonetheless, out of an abundance of caution, the Zapatas also filed an 
application for letters of administration more than four years after Mr. 
Zapata’s death for the sole purpose of receiving and distributing any funds 
awarded to Mr. Zapata’s estate in the survival suit. The Zapatas established 
standing under at least five theories.  No prohibition exists preventing 
litigants from asserting different, or even alternative, theories of standing at 
different points in a lawsuit so long as the suit is always prosecuted by 
someone with standing.  For all of these reasons, not simply based on the 
majority’s definition of “pending,”  I would sustain Mrs. Zapata’s 
cross-point and render judgment for Mr. Zapata’s estate on the damages awarded 
to the estate by the jury.
  
                                                                  SUE 
WALKER
                                                                  JUSTICE
 
 
DELIVERED: 
February 3, 2005


 
NOTES
* 
Majority Opinion by Justice McCoy; Concurrence by 
Justice Walker
 MAJORITY OPINION NOTES
1.  
Zapata had two children with Lupe Zapata (Sabrina Zapata Nava and Gregory 
Zapata) as well as four other children from a previous marriage.
2.  
Zapata also sued the doctors’ professional associations, but due to a 
settlement and a directed verdict, these claims were not submitted to the jury.
3.  
These are not the only situations in which necessity for an estate 
administration may arise; “mention of these two instances of necessity for 
administration shall not prevent the court from finding other instances of 
necessity upon proof before it.”  Id.
4.  
While arguing at this hearing, Mrs. Zapata’s counsel stated that “[i]t 
became necessary to open an estate because we were unable to secure a binding 
agreement with other members of the family.”  Dr. Pratho contends that 
this statement is evidence that the family did not agree on the distribution of 
Zapata’s estate.  But counsel also explained near the end of trial that 
all family members had signed the agreement by the time Sabrina testified to the 
standing issue at trial.  Regardless, none of these statements were made 
under oath, so they do not constitute evidence before the court.  See 
Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997).
5.  
“If a filed pleading relates to a cause of action, cross action, counterclaim, 
or defense that is not subject to a plea of limitation when the pleading is 
filed, a subsequent amendment or supplement to the pleading that changes the 
facts or grounds of liability or defense is not subject to a plea of limitation 
unless the amendment or supplement is wholly based on a new, distinct, or 
different transaction or occurrence.”  Id.
6.  
In Lorentz, we held that the plaintiff’s amended pleading did not 
relate back because the plaintiff, who was not named the personal representative 
until twelve days after filing suit on behalf of the estate, did not have 
standing at the time suit was filed, either as an heir or as a personal 
representative of the estate.  Because the petition was filed by a 
plaintiff who lacked standing, it was a nullity; consequently, any amended 
petition could not relate back to it.  Id. Here, Mrs. Zapata did 
have standing to sue on behalf of the estate as an heir at the time she filed 
her original petition, so the rule of Lorentz does not apply.
 
DISSENTING OPINION NOTES
7.  
As authority for the proposition that heirs cannot bring a survival action on 
behalf of the decedent’s estate unless they allege and prove that no 
administration is pending and no necessity for an administration exists, the 
Texas Supreme Court in Shepherd cited only Frazier, 472 S.W.2d 
750, 752 (Tex. 1971).  962 S.W.2d at 31.  Frazier did not 
involve a statutory survival action.  As authority for the proposition that 
heirs cannot bring a survival action on behalf of the decedent’s estate unless 
they allege and prove that no administration is pending and no necessity for an 
administration exists, the supreme court in Frazier cited only Youngs 
v. Youngs, 26 S.W. 191, 194 (Tex. Comm’n App. 1930, judgm’t adopted).  
472 S.W.2d at 752.  Youngs did not involve a statutory survival 
action.  As authority for the proposition that heirs cannot bring a 
survival action on behalf of the decedent’s estate unless they allege and 
prove that no administration is pending and no necessity for an administration 
exists Youngs cited Laas, 67 S.W. at 1015; Richardson, 23 
S.W. at 640-41; Giddings, 28 Tex. at 732; Green v. Rugely, 23 Tex. 
539, 542 (1859); Webster, 56 Tex. at 468; and Rogers, 54 Tex. at 
37, none of which involved a statutory survival action.
8.  
At least one litigant has argued that, because a probate court cannot issue 
letters of administration without a specific finding that an administration is 
necessary, the issuance of letters of administration at any time during the 
pendency of the survival action retroactively collaterally estops an heir from 
contending that at the time she filed the survival action on behalf of the 
estate no necessity for administration exists. See Petitioner’s Brief 
on the Merits, Austin Nursing Ctr., Inc. v. Lovato, No. 03-0659, 2004 WL 
554763, at *4-5 (filed with Supreme Court of Texas).
9.  
Pain and mental anguish damages are separate property.  See Tex. Fam. Code Ann. § 3.002 (Vernon 
1998).
10.  
Mrs. Zapata’s counsel conceded that a few weeks earlier, during the trial, he 
had filed an application for letters of administration in probate court because 
he had not at that time obtained all heirs’ signatures on the family 
settlement agreement.
11.  
Sabrina testified that the funeral expenses had been paid and that she was 
“pretty sure” the medical expenses had been paid because her father had 
insurance.
12.  
Specifically, Sabrina testified,
Q.  
Were you a part of the Zapata Family Trust, meaning, did you speak with, in this 
case, Jose Hernando Zapata, directly regarding this trust or agreement?
A.  
My lawyers did.
Q.  
No, ma’am. I’m asking have you.
A.  
Have I spoke with him? No, I have not spoke with him.
Q.  
Have you directly spoken with Corina Zapata Mia?
A.  
I haven’t spoken with any of them [her stepbrothers and sisters].